UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
In Re:

JULIA F. SOUSSIS,

        Debtor-Appellant

Civil Action No. 2:20-cv-05673-JMA

---------------------------------------------------x

## BRIEF FOR DEBTOR-APPELLANT

Jeffrey Herzberg, Esq.
JEFFREY HERZBERG, P.C.
Attorney for Debtor-Appellant Julia
    F. Soussis
300 Rabro Drive, Suite 114
Hauppauge, New York 11788
(631) 761-6558
jeff@jherzberglaw.com

# <u>TABLE OF CONTENTS</u>

BASIS OF APPELLATE JURISDICTION …………………………………..1

STATEMENT OF THE ISSUES AND APPLICABLE STANDARD OF
  REVIEW ………………………………………………………………2

STATEMENT OF FACTS AND PROCEDURAL HISTORY OF THE
  CASE ………………………………………………………………..2

INTRODUCTION ………………………………………………………5

POINT I – THE BANKRUPTCY COURT SHOULD HAVE ORDERED
  THE DISGORGEMENT OF ALL OF THE PROPOSED
  CHAPTER 13 PLAN PAYMENTS MADE BY SOUSSIS
  TO THE CHAPTER 13 TRUSTEE AS THE SOUSSIS
  PROPOSED CHAPTER 13 PLAN WAS NEVER CONFIRMED
  BY AN ORDER OF THE BANKRUPTCY COURT …………..7

POINT II – THE UNDERSIGNED COUNSEL IS ENTITLE TO AN
  AWARD OF ATTORNEY'S FEES …………………………31

CONCLUSION ………………………………………………………40

# TABLE OF AUTHORITIES

## Cases

Anderson v. Credit One Bank, N.A. (In re Anderson), 884 F.3d 382, 2018 U.S. App. LEXIS 5703 (2nd Cir. 2017) ......................................25

Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) .............................................................32, 33

Binder & Binder, PC v. Barnhart, 481 F.3d 141, 2007 U.S. App. Div. LEXIS 7133 (2nd Cir. 2006) ...................................................38, 39

Blodgett v. Stoebner (In re T.G. Morgan, Inc.), 394 B.R. 478 (8th Cir. BAP 2008) ............................................................................29

Brandon v. Sherwood (In re Sann), 546 B.R. 840 (Bkrtcy. D. Mont. 2016) .......31

Coon. Bar Ass'n v. United States, 620 F.3d 81, 2010 U.S. App. Div. LEXIS 18894 (2nd Cir. 2009) .........................................................35

Eresian v. Koza (In re Koza), 375 B.R. 711 (1st Cir. BAP 2007) ...................36

In re Acevedo, 497 B.R. 112 (Bkrtcy. D.N.M. 2013) ...........9, 10, 11, 17, 19, 22

In re Apponline.Com, Inc. (Broward Title Company v. Matrix Capital Bank, 321 B.R. 614 (E.D.N.Y. 2003) ...........................................................2

In re Bernard L. Madoff Inv., Secs., LLC, 2016 U.S. Dist. LEXIS 91675 (S.D.N.Y. 2016) ...........................................................................34

In re Crespin, 2019 Bankr. LEXIS 1575 (Bkrtcy. D.N.M. 2019) ...................22

In re Dickens, 513 B.R. 906 (Bkrtcy. E.D. Ark. 2014) .............16, 17, 18, 19, 22

In re Evans, 2020 Bankr. LEXIS 382, 68 Bankr. Ct. Dec. 106, 2020 WL 739258 (Bkrtcy. Idaho 2020) ...........................................21, 25, 36

In re JNL Funding Corp., 620 B.R. 25 (Bkrtcy. E.D.N.Y. 2020) ..............27, 28

In re Lundy, 2017 Bankr. LEXIS 3317 (Bkrtcy. N.D. Ohio 2017) ...........19, 22

In re Sarnovsky, 436 B.R. 461 (Bkrtcy. N.D. Ohio 2010) ..........................29

In re Soussis, 2020 Bankr. LEXIS 3174, 69 Bankr. Ct. Dec. 125, 2020 WL 6701357 (Bkrtcy. E.D.N.Y. 2020) ..............22, 24, 26, 27

In re Teter, 2021 Bankr. LEXIS 165, 2021 WL 371750 (Bkrtcy. N.D. Ohio 2021) ..........................................................................40

In re Turner, 168 B.R. 882 (Bankr. W.D. Tex. 1994) ..............................23

JPMorgan Chase Bank, N.A. v. Soussis, 165 A.D.3d 1240 , 84 N.Y.S.3d 805 (2nd Dept., 2018)..................................................................5

Nardello v. Balboa (In re Nardello), 514 B.R. 105, 2014 U.S. Dist. LEXIS 106357, 2014 wl 3817148 (D.N.J. 2014) .............22,

Sasidharan v. Piverger, 145 A.D.3d 814, 44 N.Y.S.3d 85 (2nd Dept., 2016) ......33

Shaifeh v. Fox, 549 B.R. 495 (Bkrtcy. N.D. Ill. 2016) .............................34

Sikes v. Samuel, 559 B.R. 135, 2019 U.S. Dist. LEXIS 133758 (W.D. La.

2016) ……………………………………………..…18, 22
Simmons v. United States, 764 Fed. Appx. 98, 2019 U.S. App. LEXIS
10904, 2019 wl 1552351 (2nd Cir. 2019) …………………………………34
United States v. Crispo, 306 F.3d 71, 2002 U.S. App. Div. LEXIS 20324
(2nd Cir. 2002) …………………………………………………...34, 35

## **Statutes and Rules**

11 U.S.C. §101(27) …………………………………………………31
11 U.S.C. §105 …………………………………………………………25, 28
11 U.S.C. §326 …………………………………………………………7, 9, 26
11 U.S.C. §503(b) …………………………………………………………30
11 U.S.C. §1326 …………………………...8, 9, 11, 22, 23, 24, 26, 28, 29, 30
28 U.S.C. §157 …………………………………………………………39
28 U.S.C. §158(1) …………………………………………………………1
28 U.S.C. §586(a) ………………………..…………………………………36
28 U.S.C. §586(e) ……………………………8, 9, 11, 24, 31
28 U.S.C. §959(a) …………………………………………………………31
28 U.S.C. §1331 …………………………………………………………38
28 U.S.C. §1346(b) …………………………………………31, 33, 35, 36, 38
28 U.S.C. §2412 …………………………………………………………40
28 U.S.C. §2678 …………………………………………………………39
RPAPL §1302-a …………………………………………………………6
UCC §3-804 …………………………………………………………..6
Rule 5009 of the Federal Rules of Bankruptcy Practice …………...……………26

Julia F. Soussis ("Soussis"), the Appellant, files this Appellants' Brief, by and through her attorney, Jeffrey Herzberg, P.C. .

## **BASIS OF APPELLATE JURISDICTION**

This Honorable Court has jurisdiction to determine the issues in this appeal in accordance with the provisions set forth in 28 U.S.C. §158(1).  28 U.S.C. §158(1) provides:

"The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders and decrees,

of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."

Soussis is appealing the Order Denying Debtor's Motion Seeking Disgorgement of the Chapter 13 Trustee's Fees and Reimbursement of Attorney's Fees dated November 12, 2020 (the "Order"), along with the Memorandum Decision Denying Debtor's Motion Seeking Disgorgement of the Chapter 13 Trustee's Fees and Reimbursement of Attorney's Fees dated November 12, 2020 (the "Memorandum") (the Order and the Memorandum are collectively referred to as the "Decision") of the Honorable Robert E. Grossman, one of the bankruptcy judges of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").  The Order conclusively denied Soussis's demand for

the disgorgement of Chapter 13 plan payments made to the Chapter 13 trustee and the reimbursement of her attorney's fees and expenses for the Chapter 13 trustee's failure to promptly remit said moneys to Soussis pursuant to the Federal Torts Claim Act (the "FTCA"). The Order is a final order for purposes of this bankruptcy appeal.

## STATEMENT OF THE ISSUES AND APPLICABLE STANDARD OF APPELLATE REVIEW

This Honorable Court must determine the following issues on this appeal:

(a) Whether the Bankruptcy Court should have ordered the disgorgement of all of the Chapter 13 plan payments made by Soussis to the Chapter 13 Trustee when the Chapter 13 plan was never confirmed by an order of the Bankruptcy Court; and

(b) Whether Soussis is entitled to the reimbursement of her attorney's fees and expenses due to the failure of the Chapter 13 trustee to return all of the Chapter 13 plan payments to Soussis in accordance with the FTCA?

This Honorable Court must review the issues of law in a de novo manner, In re Apponline.Com, Inc. (Broward Title Company v. Matrix Capital Bank), 321 B.R. 614, 620 (E.D.N.Y. 2003), as there are no factual disputes.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY OF THE CASE

The following is the facts and procedural history underlying this dispute:

2

1.      Soussis filed a voluntary petition for relief under and pursuant to Chapter 13 of Title 11, United States Code (the "Bankruptcy Code") on May 20, 2019 (the "Filing Date");

2.      Soussis filed a proposed Chapter 13 plan on June 18, 2019 and a proposed amended Chapter 13 plan on September 25, 2019;

3.      notwithstanding the filing of the Chapter 13 plan on June 18, 2019 and the amended Chapter 13 plan on September 25, 2019, neither proposed Chapter 13 plan was confirmed by an order of the Bankruptcy Court;

4.      Soussis moved to dismiss her Chapter 13 bankruptcy case by motion dated June 29, 2020;

5.      the Bankruptcy Court issued the order of dismissal dated June 30, 2020 (the "Dismissal Date");

6.      the Chapter 13 Trustee filed his final report and account for dismissed case on October 2, 2020;

7.      the Chapter 13 Trustee's final report and account reflected that Soussis paid the Chapter 13 Trustee in furtherance of her Chapter 13 plan payments the total sum of Three Hundred Sixty Two Thousand One Hundred and xx/100 Dollars ($362,100.00) from the Filing Date to the Dismissal Date (a period of approximately 13 months);

8.     the Chapter 13 Trustee only returned Three Hundred Forty One Thousand Five Hundred and Eight and xx/100 Dollars ($341.508.00) to Soussis by check dated July 22, 2020.  In other words, the Chapter 13 Trustee retained Twenty Thousand Five Hundred Ninety Two and xx/100 Dollars ($20,592.00) for his purported Chapter 13 Trustee fees.  And as the final report further reflected, the Chapter 13 Trustee was disbursing moneys from the Soussis Chapter 13 account to himself periodically without even an order of the Bankruptcy Court or notification to Soussis;

9.     Soussis filed the motion to direct the disgorgement dated August 11, 2020;

10.     the United States Trustee filed its affirmation in opposition dated September 2, 2020;

11.     the Chapter 13 Trustee filed his memorandum of law in opposition dated September 3, 2020;

12.     Soussis filed her reply to the oppositions dated September 8, 2020;

13.     the Bankruptcy Court heard oral argument on September 10, 2020;

14.     the Bankruptcy Court issued the Decision on November 12, 2020; and

15.     Soussis filed her notice of appeal on November 13, 2020.

# INTRODUCTION

The Chapter 13 bankruptcy filing was necessitated as Soussis had sought a stay pursuant to Section 362(a) of the Bankruptcy Code as the Soussis mortgage company had commenced a mortgage foreclosure action against Soussis's real property known as 90 Amherst Street, Garden City, New York (the "Property") in the Supreme Court of the State of New York, County of Nassau (the "Supreme Court"), in or about 2007, Index No. 007961/2007 (the "Supreme Court Action"); the summons and complaint in the Supreme Court Action was allegedly served on a person of suitable age and discretion, but not upon Soussis, personally. The Debtor's prior attorney had served a notice of appearance, but never filed an answer or other dispositive motion to the Supreme Court Action. The Supreme Court granted the mortgage company a default judgment against Soussis and ultimately issued a judgment of foreclosure and sale, The Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department") affirmed the order of the Supreme Court and accordingly, dismissed the failure of the mortgagee to demonstrate its standing, <u>JPMorgan Chase Bank, N.A. v. Soussis,</u> 165 A.D.3d 1240, 84 N.Y.S.3d 805 (2nd Dept., 2018). The Second Department stated at 165 A.D.3d at 1241:

> "The defendant waived any claim that the supreme court lacked personal jurisdiction over her. The defendant appeared in the action by serving a notice of appearance, and neither she nor her attorney moved to dismiss the

complaint on the ground of lack of personal jurisdiction at that time or asserted lack of personal jurisdiction in a responsive pleading."

(Citations Omitted).  It should be further noted that Soussiss had filed a prior Chapter 13 bankruptcy case before her retention of her current attorney, and the mortgage company had filed a proof of claim in the prior case in which it admitted that it did not possess the original mortgage note as required by the laws of the State of New York to demonstrate its standing.  In lieu thereof, the mortgage company was relying on a lost note affidavit in accordance with the terms and provisions set forth in UCC §3-804; however, the undersigned counsel believed and continues to believe that the lost note affidavit was deficient.

The motion for dismissal of the Chapter 13 bankruptcy case was solely based on the enactment of a new statute, namely RPAPL §1302-a, which took effect as of December 23, 2019.  RPAPL §1302-a entitled: "Defense of lack of standing; not waived" provides:

> "Notwithstanding the provisions of subdivision (e) of rule thirty-two hundred eleven of the civil practice law and rules, any objection or defense based on the plaintiff's lack of standing in a foreclosure proceeding related to a home loan, as defined in paragraph (a) of subdivision six of section thirteen hundred four of this article, shall not be waived if a defendant fails to raise the objection or defense in a responsive pleading or pre-answer motion to dismiss.  A defendant may not raise an objection or defense of lack of standing following a foreclosure sale, however, unless the judgment of foreclosure and sale was issued upon defendant's default."

A RPAPL 1302-a standing motion was already filed on behalf of Soussis with the Supreme Court and the mortgage company has defaulted in responding to the

motion; the undersigned counsel is currently awaiting the issuance of an

appropriate order from the Supreme Court.

**POINT I**

**THE BANKRUPTCY COURT SHOULD HAVE ORDERED THE
DISGORGEMENT OF ALL OF THE PROPOSED CHAPTER 13 PLAN
PAYMENTS MADE BY SOUSSIS TO THE CHAPTER 13 TRUSTEE AS
THE SOUSSIS PROPOSED CHAPTER 13 PLAN WAS NEVER
CONFIRMED BY AN ORDER OF THE BANKRUPTCY COURT**

As stated previously, the Chapter 13 Trustee retained a total of

approximately $20,592.00 of the Soussis Chapter 13 Plan payments

notwithstanding the dismissal of the Soussis Chapter 13 bankruptcy case without

the issuance of an order confirming the Soussis Chapter 13 plan.  It should be

further emphasized that the Debtor's Chapter 13 bankruptcy attorney, Ivan E.

Guerrero, Esq., had only received the total fee of Four Thousand and xx/100

Dollars ($4,000.00) relative to the $20,592.00 fee unilaterally taken by the Chapter

13 Trustee.  And as will be hereafter addressed, as the Soussis's Chapter 13 Plan

was never confirmed, the Chapter 13 Trustee should not have been permitted or

authorized to retain any fees, whether up to the 5% or 10% of all pre-confirmation

Chapter 13 Plan payments.

Section 326 of the Bankruptcy Code entitled: "Limitation on compensation

of trustee" provides in pertinent part:

"(b) **In a case under chapter 12 or 13 of this title, the court may not
allow compensation for services or reimbursement of expenses of the**

7

**United States trustee or of a standing trustee appointed under section 586(b) of title 28,** but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan."

(Emphasis Added).  Section 1326 of the Bankruptcy Code entitled: "Payments"

provides in pertinent part:

> "(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, …
>> (2)(A) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable.  **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).**
>> (3) Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a hearing."

(Emphasis Added).  Section 503(b) of the Bankruptcy Code provides for the

allowance of administrative claims including the actual, necessary costs and

expenses of preserving the estate.

28 U.S.C. §586(e)(2) provides in pertinent part:

> "(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under … or chapter 12 or 13 of title 11 {11 USCS §§1181, et seq. or … 1301 et seq.]. shall fix ---
> (B) a percentage fee not to exceed—
>> (i) in a case of a debtor who is not a family farmer, ten percent…

> Based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.
> (2)   Such individual (referring to the Chapter 13 trustee) shall collect such percentage fee from all payments received by such individual under plans in the cases under … or 1301 et seq.] for which such individual serves as standing trustee."

Accordingly, if any fees are due and owing to the Chapter 13 Trustee, there is a conflict of the 5% fee set forth in Section 326 of the Bankruptcy Code and the 10% fee set forth in 28 U.S.C. §586(e)(2)(B).  And more importantly, and as will be addressed hereinafter, there may also be a conflict between the provisions set forth in Sections 326 and 1326(2)(A) of the Bankruptcy Code and 28 U.S.C. §586(e)(2).

There are conflicting authorities as to whether the Chapter 13 Trustee can collect any fees upon the dismissal of a Chapter 13 case, without a confirmation of a Chapter 13 plan.  In re Acevedo, 497 B.R. 112 (Bkrtcy. D.N.M. 2013) first acknowledged the potential conflict between the provisions set forth in 28 U.S.C. §586(e)(2) which authorizes the Attorney General in consultation with the Office of the United States Trustee to fix a percentage fee for standing trustees in Chapter 12 and 13 cases and Section 1326(a)(2) of the Bankruptcy Code which provides that the monthly pre-confirmation payments must be retained by the Chapter 13 trustee and that if a plan is not confirmed, the trustee shall return any such payments not previously paid after deducting any unpaid claim allowed under Section 503(b) of the Bankruptcy Code.  In re Acevedo stated at 497 B.R. at 116:

9

> "The issue before the Court is whether the trustee may be paid her percentage fee in cases where no plan is confirmed, or instead must return to the debtor all plan payments received after deducting any unpaid claim allowed under §503b)."

After providing a brief summary of the parties' arguments, In re Acevedo

discussed the construction and interpretation of the statutes.  In re Acevedo stated

at 497 B.R. at 117-118:

> "When interpreting federal statutes, the Court's primary goal is to deduce the intent of Congress from the statute's language, and apply the statute accordingly.  ('It is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction.'').  When interpreting a statute, words should generally be given their ordinary or natural meaning' at the time Congress enacted the statute').  If the language of a statute is clear, ordinarily the Court's inquiry ends.  ('If the statute is clear, our inquiry ends.').  'It is a well-established law of statutory construction that, absent ambiguity or irrational result, the literal reading of a statute controls.''  Further, courts must read statutes as a whole, rather than in isolation.  ('We do not … construe statutory phrases in isolation; we read statutes as a whole.').  Accordingly, the meaning ascribed to a particular phrase must be consistent with the larger statutory context.  ('[S]tatutory terms are often 'clarified by the remainder of the statutory scheme … because the same terminology is used elsewhere in a context that makes [its] meaning clear …''').  In general, only if the language of a statute is ambiguous should the court consider legislative history and public policy underlying the statute to discern its meaning.  ('Where the statute is ambiguous, we look to the legislative history and the underlying public policy of the statute.)(the court looks to the legislative history and the underlying public policy only if a statute's plain language is ambiguous as to Congressional intent).  Finally, whenever possible, the Court should construe apparently conflicting statutes harmoniously where possible.') (court has an obligation to construe two statutory provisions in such a way as to avoid conflicts between them, if such a construction is possible and reasonable).  With these principles in mind, the Court will consider the language of the two statutes in question."

(Citations Omitted). It should be further noted that a Chapter 12 case relates to a family farmer or a fisherman with regular annual income and a Chapter 13 case relates to an individual with regular income.

Thereafter, In re Acevedo considered both Section 1326(a)(2) of the Bankruptcy Code and 28 U.S.C. §586(e)(2). In re Acevedo stated that the Office of the United States Trustee had argued that the Chapter 13 trustee was entitled to up to 10% of the amounts paid by the debtor in accordance with the provisions set forth in 28 U.S.C. §586(e)(2). In re Acevedo stated at 497 B.R. at 119-125:

> "The Tenth Circuit's decision in *In re BDT Farms, Inc.,* 21 F.3d 1019 (10th Cir. 1994), supports this conclusion. In *BDT Farms,* the Tenth Circuit held (construing 28 U.S.C. §586(e)(2)) that the Chapter 12 trustee collects the percentage fee from the entire monthly payment specified under a Chapter 12 plan. The 'payments' addressed in *BDT Farms* are the ones referred to in §1226(a), the parallel section to §1326(a) in Chapter 13 cases. In reaching its conclusion, the Tenth Circuit construed 'all payments received by such individual [the trustee] under plan,' contained in §586(e)(2), to mean the entire monthly payment, without deducting a portion for the trustee's percentage fee.
>
> The Court rejects the UST's assertion that a debtor cannot 'propose' to pay trustee's fees. First, while the Court agrees that the fee percentage is fixed as set forth in §586(e), the actual dollar amount of the fee is not fixed. Instead, the dollar amount of the fee depends on the size of the debtor's monthly lump sum plan payment. Often, the debtor files a plan proposing a smaller monthly plan payment (which would result in a smaller trustee's fee), while the trustee objects and argues that the monthly payment should be larger. The fee the trustee actually collects can vary significantly, depending on the outcome of the dispute over the size of the monthly plan payment. Thus, although the fee percentage is mandated, the debtor nevertheless 'proposes' the amount of the monthly fee when she files her plan.

11

Second, other payments a debtor proposes to pay the trustee under §1326(a)(1)(A) are as 'mandatory' as the trustee's fee. For example, in jurisdictions requiring residential mortgage payments to be made through the trustee, a debtor must pay, without modification, all amounts due after commencement of the Chapter 13 case under a residential mortgage loan in accordance with the pre-bankruptcy agreement of the parties. Similarly, pursuant to §1322(f) a plan may not materially alter the terms of certain loans from ERISA-qualified plans; where such a loan is outstanding and if the court requires that the payments be made through the trustee, the debtor has no choice but to repay through the trustee as agreed. In either case, there is no dispute or potential dispute to be resolved by a proposal, but the amounts are included in the monthly payment 'proposed' by a plan under §1326(a)(1)(A).

Section 1326(b) supports the Court's interpretation of §1326(a)(1)(A). Section 1326(b) requires the standing Chapter 13 trustee to pay the trustee's percentage fee 'before or at the time of each payment to creditors under the plan.' But the trustee may pay creditors only under a confirmed plan. *See* 11 U.S.C. 1326(a)(2) (requiring the trustee to retain the payments until confirmation or denial of confirmation, and then distribute the payments in accordance with the plan '[i]f a plan is confirmed'). Because the trustee never pays creditors if no plan is confirmed, and §1326(b) provides for payment of trustee fees *before* or at the time the trustee pays creditors, it follows that, if confirmation never happens, §1326(b) does not contemplate payment of the trustee's percentage fee. *See Rivera,* 268 B.R. at 294 (observing that §1326(b) 'seems to assume a prior confirmation.').

The Court's interpretation of §1326(a)(1)(A) is also consistent with the overall purpose of §1326. When the Bankruptcy Code was enacted in 1978, §1326 consisted only of what are now subparagraphs (b) and (c). There was no mention of payments proposed by a plan, payments by the debtor to the trustee, or disbursements of payments under a plan if a plan is not confirmed; the section only addressed payment of the trustee's fee and 'payment to creditors' to be made by the trustee. Section 1326(a) was added in 1984, to require debtors to start making plan payments to the trustee shortly after the case was filed and prior to plan confirmation. It seems very unlikely Congress intended to require that debtor make only partial payments, i.e., the payments for the benefit of creditors but not the trustee's fees. The Court therefore concludes that the §1326(a)(1)(A) payments include the trustee's fees.

Finally, the Court's interpretation of §1326(a)(1)(A) is consistent with the structure of §1326.  The UST's proposed reading of §1326(a)(1)(A) would mean that the debtor's required payments to the trustee are less than the payments the trustee must make under §1326(a)(1)(A).  The better reading is that payments proposed by a plan to the trustee under §1326(a)(1)(A) include the trustee's fees, so that the proposed amount matches what the trustee is required to pay under §1326(b) and (c).

### E. Section 586(e)(2) Cannot be Read in Isolation and Can be Harmonized with §1326.

The first sentence of 28 U.S.C. §586(e)(2) can be construed in at least three ways:

*--Mandatory Construction*
The subsection obligates the trustee to collect trustee fees from all payments she receives under a plan, which includes payment of the collected fee to herself or the UST's System Fund even in cases where no plan is confirmed;

*--Collect and Hold Construction:*
The subsection requires the Trustee to collect and hold the fees until confirmation, then to disburse them as directed by 11 U.S.C. §1326(a)(2) and 28 U.S.C. §586(e)(2).

*--Responsibility and Source Construction:*
The subsection identifies the Trustee as the party responsible for collecting the percentage fees and identifies the plan payments received by the Trustee as the sole source for collection, but does not address when the fees should be collected or paid to the Trustee or UST System Fund.

Each of these three constructions is plausible.  Without reference to Chapter 12 and Chapter 13, the Trustee's and UST's proposed mandatory' construction makes some sense.  Given the Court's interpretation of §1326(a)(1)(A), however, the 'mandatory payment' interpretation of §586(e)(2) creates a conflict with §1326 because it requires the Trustee to collect and retain the percentage fee (or to pay any surplus to the UST's System Fund) in the face of §1326(a)(2)'s directive to return payments to the debtor if a plan is not confirmed.

To avoid this conflict, the Court concludes that the best, harmonious reading of the two statutes is that §586(e)(2) directs the trustee to collect and hold the percentage fees pending plan confirmation, while §1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation, including the trustee's percentage fee.  The UST points out that §586(e)(2) requires the trustee to collect the percentage fee on all payments received under plans, not limiting such collection to confirmed plans.  The UST points out further that in the Code, the term 'plan' is used to refer to both confirmed and unconfirmed plans unless the term 'confirmation' or 'confirmed' appears in close proximity or the context clearly dictates otherwise.  The Court finds this argument persuasive as it relates to §586(e)(2) and agrees that the trustee is to collect the percentage fee from all payments received under both confirmed and unconfirmed plans.  This construction is consistent with the Court's determination that payments proposed by a plan under §1326(a)(1)(A) include all payments the debtor makes to the trustee, including the trustee's percentage fee.  The Court disagrees that the term 'collect,' as used in §586(e)(2), includes not only setting aside funds from payments received under plans for trustee's fees but also paying those funds to the trustee or to the US System Fund.  Such a construction would conflict with §§1326(a)(1)(A) and 1326(b)(2).  As discussed above, §1326(b)(2) requires the trustee in unconfirmed cases to return to the debtor all funds received, including the trustee's fee, after payment of administrative expenses.  Consequently, even though §586(e) does not specifically address when the collected trustee's fees are to be paid out, the Court rejects the UST's construction of §586 payment of such fees from payments in cases with unconfirmed plans.

The requirement in the second sentence of §586(e), directing the Trustee to pay certain excess funds to the UST System Fund, does not conflict with the Court's interpretation of §586 and §1326.  Both clauses in the second sentence of §586(e)(2) can be reasonably interpreted only to require payments in cases in which plans are confirmed.  Nothing in the second sentence of §586(e)(2) requires the trustee to generate such surplus by paying her salary and operating expenses from funds collected in cases where no plan is confirmed.

F. Comparing §1226 and §1326. The Court's harmonization of §586 and §1326 is further supported by the differences between §1326(a)(2) and its Chapter 12 counterpart, §1226(a)(2).  Section 1226(a) provides:

14

(a) Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan.  If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting—

    (1) any unpaid claim allowed under section 503(b) of this title; and

    (2) **if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.**

11 U.S.C. §1226(a)(emphasis added).  Thus, for Chapter 12 cases, Congress specifically addressed the issue by allowing the standing Chapter 12 trustee to deduct her percentage fee in unconfirmed cases from funds returned to the debtor.  Congress did not, however, add similar language to §1326(a)(2).  Section 1226(a) was adopted in 1986, two years after Congress added what is now §1326(a).  When Congress enacted §1226(a), it amended §1326, leading the Court to conclude that Congress could have easily inserted a similar provision into §1326(a).  The fact that it did not supports an inference that Congress intended different treatment of trustee fees in Chapter 12 and 13 cases.  When Congress includes particular language in one section of a statute but omits it in another section of the same Act,'' the difference is presumed to be intentional.  (citing the foregoing cases and stating that 'Congress knew how to clearly express such allowance of percentage fees, and its failure to do so in §1326(a) indicates Congress did not intend to allow such fees in Chapter 13 cases where plans are not confirmed.').  It would be improper for the Court to read §1226(a)(2) into Chapter 13, or to ignore the crucial difference between the sections.

G. Rivera and Miranda.  Finally, although neither *Rivera* nor *Miranda* is binding on this Court, the Court remains persuaded by the reasoning in those cases.  Both *Rivera* and *Miranda* found that while §586(e) authorizes the standing Chapter 13 trustee to collect the percentage fee and determine how the fee shall be calculated, it must be read in conjunction with §1326, the applicable Bankruptcy Code section which calls for the standing Chapter 13 trustee to return payments to the debtor (less administrative expenses) if a plan is not confirmed.  *Miranda* also found persuasive the specific language contained in §1226 which Congress did not include in the parallel statute applicable to substantial change in the relevant statutes, but rather on new

arguments about the construction of those statutes. That is too slender a reed. The Court has considered the UST's and the Trustee's arguments and found them unpersuasive.

## III. CONCLUSION

The two statutes at issue can best be harmonized if §586(e)(2) is construed to a) identify a source from which trustee's percentage fees are to be paid; and b) instruct the Trustee to collect and hold the fees pending plan confirmation; §1326(a), in turn, dictates the conditions and timing of payment. This construction, the Court believes, is what Congress intended, and is a more natural reading of the subsections. The Court acknowledges that its method of harmonizing the statutes is not totally satisfying – it is based on a somewhat unnatural reading of the first sentence of §586(e)(2). The only alternative, however, is a substantially less natural reading of §1326(a). On the whole, the Court believes that its construction better reflects legislative intent. 11 U.S.C. §1326(a)(2) and 28 U.S.C. §586(e)(2), read together, require the Trustee to return all plan payments to the Debtors (after deducting administrative expenses) without first deducting her percentage fees."

(Emphasis Added)(Citations Omitted)(Footnotes Omitted). In re Dickens, 513

B.R. 906 (Bkrtcy. E.D. Ark. 2014) stated at 513 B.R. at 907-908:

"The issue before the Court is whether the Trustee is permitted to retain a collected percentage fee provided for by 28 U.S.C. §586 when the Debtors' case was dismissed prior to confirmation of a plan. This issue has been percolating through the courts recently. Joined by the U.S. Trustee, the Trustee asserts that §586 unambiguously provides for the retention of the fee in such cases. The Debtors argue that §586 is ambiguous and must be read in conjunction with 11 U.S.C. §1326(a) of the Bankruptcy Code. By reading these statutory provisions together, the Debtors maintain that they are entitled to a refund of certain percentage fees collected by the Trustee in their case. For the reasons stated below, the Court finds that the Trustee must remit the percentage fee to the Debtors."

In re Dickens while following most of the analysis set forth in In re Acevedo

further stated at 513 B.R. at 911, that the Office of the United States Trustee had a

three prong argument; it is as follows:

1. the provisions set forth is based on the provisions set forth in Section

   586(e) are unambiguous and are based on the terms "plans" as used in

   Section 586(e)(2) which include both confirmed and unconfirmed plans –

   the court in Dickens agreed with this interpretation;

2. the Dickens court also agreed that the ordinary meaning of the phrase

   "collect" is "to obtain payment", and, accordingly, stated: "the Court

   agrees that, in the context of §586(e)(2), to collect a percentage fee

   means to 'obtain payment' of it"; and

3. in discussing the third and final prong of the United States Trustee's

   argument that when the standing trustee obtains payment of the

   percentage fee, the fee cannot be returned.  Dickens stated:

   "In other words, to 'collect' a percentage fee under §586(e)(2) is to
   obtain an irrevocable payment.  The Court does not agree.  Nothing in
   the definition of 'collect' advanced by the U.S. Trustee mandates a view
   that collection of a percentage fee is irrevocable and forever vests in the
   standing trustee. *See In re Acevedo,* 497 B.R. 112, 122 (Bankr. D.N.M.
   2013) positing 'at least three ways to construe the first sentence in
   §586(e)(2)).  The trustee's interpretation is also at odds with the Trustee's
   duty to pay into the United States Trustee Program fund any collected
   fees during the fiscal year that puts her over the cap of §586(e)(2)(A).
   Furthermore, the trustees' interpretation of §586(e)(2), a provision
   applicable to Chapter 12 cases, makes 11 U.S.C. §1226(a)(2)
   superfluous."

In re Dickens stated at 513 B.R. at 913-914:

> "*Acevedo's* interpretation of 'amount proposed by the plan to the trustee'
> under §1326(a)(1)(A) makes sense.  It recognizes that '[a] debtor's plan
> ordinarily proposes monthly lump sum payments to the trustee for the term
> of the plan,' *id.* at 119, which is the practice in the Eastern District of
> Arkansas.  At the January 30, 2014 hearing, Tracey Greenwood, case
> operations administrator for the Trustee's office, confirmed that the
> percentage fee is part and parcel of the monthly lump sum payment written
> down in the blank space provided for in the model plan used by debtors,
> including the ones in this case.  If the monthly payments do not cover the
> percentage fee, Greenwood explained that the Trustee will object to the plan.
> Greenwood's testimony coupled with the reasoning of *Acevedo* leads to the
> conclusion that the percentage fee is included and described by the statute as
> an 'amount proposed by the plan to the trustee' under §1326(a)(1), that must
> be returned to the debtor when a plan is not confirmed in accordance with
> subsection (a)(2).

> In summary, the Court finds that §586(e)(2) specifies the source from which
> is to collect the percentage fee while §1326(a) addresses the circumstances
> under which the trustee must return the collected fee to the debtor.  If a case
> is dismissed prior to the confirmation of a plan, §1326(a)(2) requires the
> trustee to return the collected percentage fee to the debtor."

Sikes v. Samuel, 559 B.R. 135, 2019 U.S. Dist. LEXIS 133758 (W.D. La. 2016),

concerned whether the Chapter 13 trustee was entitled to retain his percentage

commission on insurance proceeds received by the Chapter 13 trustee due to a

motor vehicle accident involving the Chapter 13 debtor's vehicle and which

retention of fees was objected to by the secured creditor (the lien holder of the car)

and the debtor.  Sikes v. Samuel stated at 559 B.R. 139-140:

> "Additionally, to the extent the Nardello court interpreted 28 U.S.C.
> §586(e)(2), the Court finds its analysis unpersuasive.  Though the Nardello
> court did recognize the statute's language stating that only payments

received by the trustee 'under plans' qualify for the payment of a fee to the trustee, the court never fully addressed this issue.  See id. at 110-12, 116-17.  Instead, though the court quoted the 'under plans' language, it concluded that 'amounts received under plans refers to all monies received by the standing trustee,' essentially ignoring the 'under plans' language, it concluded that 'amounts received under plans refers to all monies received by the standing trustee,' essentially ignoring the 'under plans' language.  Id. at 111.  The debtor argued that because a part of the proceeds of the sale were never the debtor's property at all but instead belonged to the co-owners, the payment… Thus, because of the factual differences between this case and Nardello and the fact that the Court finds Nardello's interpretation of 28 U.S.C. §596(e) to be inconsistent with the statute's plain language, the Court does not find the Nardello analysis persuasive."

In re Lundy, 2017 Bankr. LEXIS 3317 (Bkrtcy. N.D. Ohio 2017) while recognizing that there is a dispute in the interpretation of the term "to collect" between Acevedo and Dickens and agreed with the Acevedo interpretation, nevertheless agreed with both Acevedo and Dickens, that if a Chapter 13 plan is not confirmed, the Chapter 13 trustee must remit all of the pre-confirmation moneys paid to it other than the administrative expenses set forth in Section 503 of the Bankruptcy Code.  In re Lundy stated at 2017 Bankr. LEXIS 3317 at *23-*28:

"For all of the reasons discussed above, the court also agrees with the ultimate conclusion in both *Acevedo* and *In re Dickens* that §1326(a)(2) requires that payments received by the standing trustee under a proposed Chapter 13 plan, which include the statutory percentage fee, must be returned to the debtor, less allowed administrative expenses, if a plan is not confirmed.  This conclusion is supported by the language in the parallel statute in Chapter 12, §1226.  That section provides:

(statute is not repeated and restated herein).

11 U.S.C. §1226(a).  So Congress knows how to provide for allowance of a standing trustee's percentage fee in cases where a plan is not confirmed.

Section §1226(a) was enacted in 1986, two years after Congress added what is now §1326(a).  At that time, §1326 was also amended, yet Congress did not include a similar provision in §1326(a).  'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.

The conclusion that the payments received by the standing trustee under a proposed Chapter 13 plan, including amounts for the Trustee's percentage fee, must be returned to the debtor if a plan is not confirmed is also supported by the legislative history, which states that '[i]f a private standing trustee serves, his fee is fixed by the Attorney General under proposed 28 U.S.C. 586(e)(2),' which as since been redesignated as §1326(b)(2).  As the court concluded earlier, §1326(b) addresses priority claim payments made under a confirmed plan.

The court finds *Nardello,* relied upon by the Trustee, to be factually distinguishable and its interpretation of §1326(a)(2) and §586(e)(2) unpersuasive.  *Nardello* involved a Chapter 13 case in which the debtor proposed a plan that included two sources of payments – monthly payments and monies received from the sale of his yacht.  *Nardello,* 514 B.R. at 115.  The debtor's plan was never confirmed, and the case was voluntarily dismissed.  Before the cases was dismissed, the court had authorized the sale of real estate co-owned by the debtor and two non-debtors and ordered the trustee to hold the proceeds of the sale pending further order of the court.  The trustee paid the co-owners their share, and, on dismissal, disbursed the proceeds remaining to the debt, less a 6.6 percentage fee on all payments received by the trustee, including the portion of the proceeds of the sale that belonged to the co-owners.  The debtor objected to the trustee retaining any fee, arguing that §1326(a) and (b) do not provide for payment of a percentage fee where the case is dismissed before confirmation.

The district court rejected the debtor's argument.  It stated that '[i]t is clear that the percentage fee is distinct from payment to creditors and that Section 1326(a)(2) is silent, as to whether the trustee's percentage fee shall be returned when a plan is unconfirmed.'  Based on that reasoning, the court concluded that §1326(a)(2) did not require the standing trustee's percentage mandatory on all payments received by the trustee, including in cases dismissed before confirmation.  Later in the opinion, the court agreed with the bankruptcy court that the payments upon which the trustee calculated her

percentage fee (the real estate proceeds) were not payments proposed under the debtor's plan and thus were not controlled by §1326(a). It further found that it was irrelevant that no payments were made to creditors 'because Section 586(e)(2) is directed to 'all payments received' by the trustee, not payments to creditors.'

To the extent the *Nardello* court's conclusion was based on the fact that the real estate sale proceeds were not a source of the payments proposed by the debtors plan and thus that §1326(a)(2) did not apply, the case is factually distinguishable. All of the payments to the Trustee in this case were payments under Debtors' proposed plan(s). To the extent the court's conclusion was based on its determination that §1326(a)(2) is silent as to whether the percentage fee must be returned when a plan is not confirmed, its analysis is unpersuasive. As discussed earlier, §1326(a)(2) addresses what the trustee must do with the payments 'made under paragraph (1)(A),' which are described as payments 'in the amount –proposed by the plan.' Even the *Nardello* court found that the amounts received by the trustee under the plan 'cover both payments to creditors and the trustee's percentage fee.' The payment amounts that must be returned to debtors when their plan is not confirmed must include the trustee's percentage fee.

In summary, the court concludes that §586(e)(2) requires a standing trustee to collect the applicable percentage fee from all payments that the trustee receives under both confirmed and unconfirmed plans and to hold the fee collected pending plan confirmation. Disbursement of the payments being held, which include the percentage fee, is governed, by §1326(a)(2) and (b). Where a plan is not confirmed, §1326(a)(2) requires the trustee to return all such payments, including the statutory percentage fee being held by the trustee, after deducting any allowed administrative expense claims."

(Citations Omitted). And In re Evans, 2020 Bankr. LEXIS 382, 68 Bankr. Ct. Dec. 106, 2020 WL 739258 (Bkrtcy. Idaho 2020) stated at 2020 Bankr. LEXIS 382 at *27:

"This Court believes the correct interpretation falls in line with the reasoning of *Acevedo, Dickens, and Lundy.* Section 586(e)(2) directs the trustee to collect and hold the payments pending plan confirmation and the source from which to collect the percentage fee, while §1326(a)(2) tells the trustee

when and how to disburse payments before or after confirmation.
Accordingly, the trustee must hold the payments in her possession until
confirmation or denial of confirmation. If a chapter 13 case is dismissed
pre-confirmation, as in this case, the trustee shall return any such payments
not previously paid and not yet and owing to creditors to the debtor,
including the trustee's percentage fees."

Please see also In re Crespin, 2019 Bankr. LEXIS 1575 (Bkrtcy. D.N.M. 2019).

It should be further noted that the List of Changes and Updates to the

Handbook for Chapter 13 Standing Trustees dated May of 2015 stated in pertinent

part:

"If the plan is dismissed or converted prior to confirmation, the standing
trustee must reverse payment of the percentage fee that had been collected
upon receipt if there is controlling law in the district requiring such reversal
or …:'"

Notwithstanding the holdings in In re Acevedo, In re Dickens, Sikes v.

Samuel, In re Lundy and In re Evans, the Bankruptcy Court in In re Soussis ruled

contrary thereto and followed the holding in In re Nardello. However, in doing so,

the Bankruptcy Court's determination was flawed for several reasons, which are

discussed herein.

First, the Bankruptcy Court held that the monthly plan payments set forth in

11 U.S.C. §1326(a)(1) constituted a "user fee" at 2020 Bankr. LEXIS at *16.

Specifically, the Bankruptcy Court stated: "Hence, those who file for bankruptcy

must pay 'user fees' in exchange for the privileges and protections the Bankruptcy

Code affords" citing among other authorities, In re Nardello and In re Turner, 168

B.R. 882 (Bankr. W.D. Tex. 1994).  <u>Wikipedia</u> defines the term: "user fee" as: "a

fee, tax, or impost payment to a facility owner or operator by a facility user as a

necessary condition for using the facility."  <u>Wikipedia</u> further stated:

> "People pay user fees for the use of many public services and facilities.  At
> the federal level in the United States, there is a charge for walking to the top
> of the Statute of Liberty, to drive into many national parks or to use
> particular uses of the Library of Congress."

Section 1326(a)(1) of the Bankruptcy Code provides:

> "Unless the court orders otherwise, the debtor shall commence making
> payments not later than 30 days after the date of the filing of the plan or the
> order for relief, …"

The statute never stated that the provisions thereof was a "user fee" nor

referenced said language.  And the amount of the proposed plan payments has no

correlation to the number of court appearances and/or the nature and extent of

services provided by the Chapter 13 trustee, etc.; but rather, the amount of the

proposed plan payments as set forth in Section 1326(a) of the Bankruptcy Code is

based solely on the amount of disposable income of the Chapter 13 debtor.  And

most importantly, the monthly plan payments are refundable in accordance with

the provisions set forth in Section 1326(b)(2) of the Bankruptcy Code unlike a user

fee.  Accordingly, the plan payment referenced in Section 1326(a) is not a "user

fee".  If anything, the payment of the bankruptcy filing fees for a Chapter 13

petition may be more similar to a user fee.

Second, the interim "collection" of the Chapter 13 plan payments and applying the same to the Chapter 13 trustee's fees is directly violative of the provisions set forth in Section 1326(b)(2)(A) of the Bankruptcy Code. As stated previously, the first sentence of Section 1326(b)(2) provides: "A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation." Accordingly, the interpretation thereof by the Bankruptcy Court that the Chapter 13 Trustee can unilaterally take all or part of the Chapter 13 plan payments pursuant to the provisions set forth in 28 U.S.C. §586(e)(2) is directly contrary to the provisions set forth in Section 1326(b)(2) of the Bankruptcy Code; and more importantly, 28 U.S.C. §586(e)(2) uses the term "collect". The word "collect" is defined in Wikipedia and Dictionary.com as: "bring or gather together; assemble" and Merriam -Webster Dictionary defines the word as: "to gather from a number of sources". In other words, the use of the word "collect" as used in 28 U.S.C. §586(e)(2) clearly means "to receive and gather" the Chapter 13 plan payments. And at 2020 Bankr. LEXIS 3174 at *24, the Bankruptcy Court stated: "When the fee is collected, it is severed from the portion of the plan earmarked towards creditors."; the word: "sever" has been defined by Wikpedia as: "divide" and by Merriam-Webster Dictionary as "to put or keep apart". Please note that 28 U.S.C. §586(e)(2) does not use the term "collect and disburse" or "collect and sever". And unlike the statement at 2020 Bankr. LEXIS 3174 at *3: "Section 28

24

U.S.C. §586 clearly does not state or provide the Chapter 13 trustee the right to take upon collection of each plan payment, any portion of the Chapter 13 plan payment as the Trustee's statutory fee.  In fact, <u>In re Evans</u> stated:

> "Section 586(e)(2) directs the trustee to collect and hold the payments pending plan confirmation and the source from which to collect the percentage fee, while §1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation."

Third, the Bankruptcy Court claimed that it lacks the equitable powers pursuant to Section 105(a) of the Bankruptcy Code to mandate the disgorgement of the ill-gotten and unwanton Chapter 13 trustee fees.  Section 105(a) provides:

> "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

In fact, <u>Anderson v. Credit One Bank, N.A. (In re Anderson),</u> 884 F.3d 382, 2018 U.S. App. LEXIS 5703 (2nd Cir. 2017) stated at 884 F.3d at 391:

> "Congress afforded the bankruptcy courts wide latitude to enforce their own orders, specifically granting these specialty courts the power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code.  11 U.S.C. §105(a).  We have previously observed that '[t]he statutory contempt powers given to a bankruptcy court under §105(a) complement the inherent powers of a federal court to enforce its own orders.'  *In re Kalikow,* 602 F.3d 82, 96 (2d Cir. 2010).  Neither the statutory basis of the order nor its similarity – even uniformly—across bankruptcy cases alter the simple fact that the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it."

Similarly, the Bankruptcy Code has the authority to issue any order in furtherance of the provisions of the Bankruptcy Coe, and, in the instant matter, has the

exclusive jurisdiction to enforce the provisions set forth in Sections 326 and 1326 of the Bankruptcy Code.  Accordingly, it is undisputable that the Bankruptcy Code had jurisdiction to issue and, thereafter, enforce any order pertaining to a violation of the provisions of Sections 326 and/or 1326 of the Bankruptcy Code, inclusive of the equitable powers set forth in Section 105(a) of the Bankruptcy Code to carry out the provisions of the Bankruptcy Code; and Soussis is not seeking to utilize the provisions of Section 105(a) as "'a roving commission to do equity'" as stated at 2020 Bankr. LEXIS 3174 at *17.   Rather, Soussis is seeking the enforcement of the provisions set forth in Sections 326 and/or 1326(b) of the Bankruptcy Code. And Soussis never sought to cause the Bankruptcy Court to determine the amount of the Chapter 13 trustee fees, as the Chapter 13 trustee is not entitled to any part of the Chapter 13 plan payments until and unless a Chapter 13 plan is confirmed.

Third, the Bankruptcy Code stated that an action to object to the final report should have been filed in lieu of a motion for disgorgement of the Chapter 13 trustee fees, pursuant to Rule 5009(a) of the Federal Rules of Bankruptcy Procedure.  Please see 2020 Bankr. LEXIS 3174 at *18-*19.  Rule 5009(a) entitled: "Closing Chapter 7, Chapter 12, Chapter 13, and Chapter 15 Cases; Order Declaring Lien Satisfied" provides in pertinent part:

> "If in a Chapter 7, chapter 12, or chapter 13 case, the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed the United

States trustee or a party in interest, there shall be a presumption that the estate has been fully administered."

Soussis never disputed that the Soussis estate has been fully administered; the only dispute is whether the Chapter 13 Trustee should be allowed to keep the Chapter 13 Trustee percentage commission; Soussis argued that he should not be allowed to do so and the United States Trustee and the Chapter 13 Trustee argued that he should be allowed. And as even stated by the Bankruptcy Court, other bankruptcy courts have permitted motions seeking the disgorgement and not as an objection to the final report. To permit the denial of the disgorgement due to this procedural nicety, if any, would put "form over substance" and should not be countenanced by this Honorable Court. In fact, neither the United States Trustee nor the Chapter 13 Trustee had argued this procedural nicety. And, in fact, the Bankruptcy Court recognized that a motion for disgorgement is appropriate in certain circumstances in a bankruptcy proceeding, including to recover unwanton moneys. 2020 Bankr. LEXIS 2020 at *17 ("The trustee is not charged with wrongdoing, nor can the Court find that the Trustee has violated an order of the Court. *In re JNL Funding Corp.,* 620 B.R. at 25." In In re JNL Funding Corp., 620 B.R. 25 (Bkrtcy. E.D.N.Y. 2020) held that a liquidating Chapter 11 trustee must "disgorge" sufficient funds of the Chapter 11 estate moneys after the Chapter 11 liquidating trustee failed to pay the quarterly fees due and owing the United States Trustee and

27

the professional fees awarded.  In re JNL Funding Corp. stated at 620 B.R. at *28-

*29:

> "While the authority granted under §105(a) is equitable and broad, it does
> not authorize the creation of substantive rights that are otherwise unavailable
> under applicable law, or constitute 'a roving commission to do equity.'
> However, it is beyond dispute that the authority of this Court under §105(a)
> includes the power to enforce its own orders.  ('The [Bankruptcy] Code
> charges the bankruptcy court with carrying out its orders … Hence, a
> bankruptcy court plainly ha[s] jurisdiction to interpret and enforce its own
> prior orders.'
>
> Disgorgement is an equitable remedy used to wrest ill-gotten gains from a
> wrongdoer.  This Court also may order disgorgement of fees to address a
> breach of fiduciary duty.  ('Bankruptcy law also gives a court wide
> discretion in fixing a remedy for breach of fiduciary duties by a bankruptcy
> professional.  The available remedies range from sanctions or the refusal,
> reduction or disgorgement of attorney's fees.
>
> Given the broad language of §105(a), this Court may require disgorgement
> when a party who bears the obligation to pay certain costs or expenses under
> a confirmed Plan and who is entrusted with estate funds to make those
> payments fails to do so."

(Citations Omitted).  The failure of the Chapter 13 trustee to properly disburse

funds lawfully entrusted to him in accordance with the provisions set forth in

Section 1326(b)(2) of the Bankruptcy Code is such a serious "wrongdoing" that it

is subject to "disgorgement" pursuant to the provisions set forth in Section 105(a)

of the Bankruptcy Code.  And this wrongdoing was further heightened by the

periodic and interim taking of the entrusted funds throughout the course of the

Chapter 13 case without an order of the Bankruptcy Court and notice to Soussis.

And further, if necessary, "a bankruptcy court may conduct an independent examination of a trustee's final report, and, where cause exist, decline to approve the report." In re Sarnovsky, 436 B.R. 461, 463 (Bkrtcy. N.D. Ohio 2010) citing among other authorities, Blodgett v. Stoebner (In re T.G. Morgan, Inc.), 394 B.R. 478, 485 (8th Cir. B.A.P. 2008). In fact, Blodgett v. Stoebner (In re T.G. Morgan, Inc.) stated at 394 B.R. at 485:

> "Although the final report in a case may present one last opportunity for a bankruptcy court to review a trustee's handling of an estate, the final report is not typically the time to raise issues such as the ones being brought by the Objectors here. If the Objectors believed that the Trustee was administering assets belonging to them pursuant to the settlement in the FTC Action, they had ample opportunity to raise those issues before now, and that would have been the time in which to do so."

Similarly, Soussis has brought to the attention of the Bankruptcy Court that the Chapter 13 Trustee had received an unwanton amount of Chapter 13 trustee fees and, thus, the Bankruptcy Court had an independent duty to investigate the same and determine whether the fees were warranted by the provisions of the Bankruptcy Code.

And although the Bankruptcy Court referenced the provisions stated in Section 1326(b)(2) of the Bankruptcy Code, it sought to totally ignore the provisions thereof that mandates that any and all Chapter 13 plan payments be retained by the Chapter 13 Trustee until confirmation or denial of the Chapter 13 plan; and if the Chapter 13 case is dismissed prior to confirmation of the plan, the

Chapter 13 Trustee must return all of the Chapter 13 plan payments to the Debtor less amounts already paid to creditors and any and all allowed administrative expenses (Section 503(b) of the Bankruptcy Code claims). In short, the Bankruptcy Court is seeking to add provisions into Section 1326(b)(2) of the Bankruptcy Code that were never inserted by Congress.

And to augment the interpretation flaws by the Bankruptcy Court, the Bankruptcy Court stated that the provisions set forth in Section 326 of the Bankruptcy Code are inapplicable to standing Chapter 13 trustees. However, the statute states:

> "In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee **or of a standing trustee appointed under section 586(b) of title 28**, …"

(Emphasis Added). The Bankruptcy Court never reconciled its determination with the specific provisions set forth in Section 326 of the Bankruptcy Code. However, that statute specifically states that the standing Chapter 13 trustee may not be allowed any compensation or reimbursement of expenses.

For all of the above reasons, the Decision was flawed when it determined that the Chapter 13 Trustee may retain his Chapter 13 statutory fee out of the Chapter 13 plan payments when the Soussis case was dismissed without a confirmed Chapter 13 plan.

## POINT II

## <u>THE UNDERSIGNED COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES</u>

It may be problematic whether the undersigned counsel is entitled to attorney's fees in accordance with the provisions set forth in the Bankruptcy Code as Section 101(27) of the Bankruptcy Code provides an exception for the United States Trustee while serving as a trustee in a case under this title. <u>Brandon v. Sherwood (In re Sann),</u> 546 B.R. 840 (Bkrtcy. D. Mont. 2016). However, the provisions set forth in the Federal Tort Claims Act (the "FTCA") does provide the right to reimbursement of attorney's fees, 28 U.S.C. §1346(b). In the current matter, the FTCA action seeking the payment of attorney's fees is not being prosecuted pursuant to the provisions to the Bankruptcy Code, but rather, the inappropriate dissipation and taking of the escrow moneys which would be an unlawful conversion under the laws of the State of New York and a breach of a fiduciary duty to safeguard trust funds. And 28 U.S.C. §959(a) specifically provides that a trustee "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." Additionally, as recognized by the United States Trustee in Paragraph No. 21 of its Opposition, "any excess fees must be remitted to the United States Trustee System Fund. 28 U.S.C. §§586(e)(1), (2), 589a(b)(8)."

28 U.S.C. §1346(b) generally provides:

> "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of act by an employee of the Government **while acting within the scope of his office** or employment, where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred."

(Emphasis Added).  And as stated by the United States Supreme Court in

<u>Berkovitz v. United States,</u> 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988),

there is a "discretionary" exception to said statute.  <u>Berkowitz v. United States</u>

stated at 486 U.S. at 535-536:

> "any claim … based upon the exercise or performance or the failure to exercise or perform a **discretionary function or duty** on the part of a federal agency or an employee of the Government, whether or not the discretion involved by abused.'  28 U.S.C. §2680(a).

> This exception, as we stated in our most recent opinion on the subject, 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.  *United States v. Varig-Airlines,* 467 U.S. at 808."

(Emphasis Added).

Under the laws of the State of New York, if an individual fails to return

rightful moneys to the proper recipient, the holder of the moneys is liable for said

sum of moneys, i.e., a robber of a retail establishment.  But more importantly, the

Chapter 13 Trustee and/or the United States Trustee is acting as an escrow agent of

the Chapter 13 Plan payments paid by Soussis prior to the confirmation of her plan.

Sasidharan v. Piverger, 145 A.D.3d 814, 44 N.Y.S.3d 85 (2nd Dept., 2016) stated at

145 A.D.3d at 815:

> "'An escrow agent 'not only has a contractual duty to follow the escrow
> agreement, but additionally becomes a trustee of anyone with a beneficial
> interest in the trust'' with 'a duty not to deliver the property held in escrow
> to anyone except upon 'strict compliance with the conditions imposed' in the
> escrow agreement.  Thus, an escrow agent can be held liable for breach of
> the escrow agreement and breach of fiduciary duty as escrowee."

(Citations Omitted).  Accordingly, under the laws of the State of New York, the

Chapter 13 Trustee and/or the United States Trustee has breached its fiduciary duty

to Soussis, who maintains a beneficial interest in the escrowed funds until and

unless the Chapter 13 plan is confirmed.  Therefore, Soussis has satisfied the first

provision set forth in 28 U.S.C. §1346(b) as a private individual/escrow agent

would be so liable under the laws of the State of New York.

The second provision of the FTCA is whether the entire return of the

escrowed moneys/the Chapter 13 Plan payments were discretionary or mandatory.

If discretionary, the Chapter 13 Trustee and/or the United States Trustee would not

have to reimburse Soussis's legal fees and expenses; however, if said return was

mandatory, the "discretionary" aspect of the FTCA would be inapplicable.

Berkowitz v. United States stated at 486 U.S. at 536:

> "Thus, the discretionary function exception will not apply when a federal
> statute, regulation, or policy specifically prescribes a course of action for an
> employee to follow.  In this event, the employee has no rightful option but to
> adhere to the directive.  And if there is no discretion in the conduct for the
> discretionary function exception to protect. Cf. *Westfall v. Erwin,* 484 U.S.

292, 296-297, 98 L.Ed.2d 619, 108 S.Ct. 580 (1988) (recognizing that conduct that is not the product of independent judgment will be unaffected by threat of liability)."

And the Second Circuit stated in <u>Simmons v. United States,</u> 764 Fed. Appx. 98,

2019 U.S. App. LEXIS 10904, 2019 WL 1552351 (2ⁿᵈ Cir. 2019) at 764 Fed.

Appx. At 99-100:

> "The FTCA waives sovereign immunity for certain damage claims. <u>See</u> 28 U.S.C. §1346(b)(1). The DFE excepts from this waiver claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.' §2680(a). The DFE applies if the challenged conduct 'involves an element of judgment or choice.' <u>Berkovitz by Berkovitz v. United States,</u> 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and that judgment is 'based on considerations of public policy.' <u>Id.</u> at 537. 'The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to public policy analysis.' <u>United States v. Gaubert,</u> 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)."

And while it may be further argued that the United States Trustee is not liable for

discretionary acts committed by a Chapter 7 trustee, <u>Sharifeh v. Fox,</u> 549 B.R. 495,

529 (Bkrtcy. N. D. Ill. 2016), <u>In re Bernard L. Madoff Inv. Secs., LLC,</u> 2016 U.S.

Dist. LEXIS 91675 (S.D.N.Y. 2016), the dissipation of escrow funds is not a

discretionary act, but rather the proper maintenance and retention of all of the

moneys in the Trustee's escrow account is a mandatory act.

In opposition, the United States Trustee argued that pursuant to <u>United States v. Crispo,</u> 306 F.3d 71, 82, 2002 U.S. App. Div. LEXIS 20324 (2ⁿᵈ Cir.

34

2002) a private bankruptcy trustee is not a governmental employee, but United States v. Crispo further stated at 306 F.3d at 81:

> "The Bankruptcy Act of 1898, 30 Stat. 544 (Bankruptcy Act), which created the position of bankruptcy trustee, gives us the answer to both questions. The answer in each case is 'yes.' In §1 of the Bankruptcy Act, entitled 'Meaning of Words and Phrases,' Congress that the term 'officer' shall include clerk, marshal, receiver, referee, *and trustee.*' (Emphasis Added). Thus, in the specific context of bankruptcy proceedings, Congress placed trustees in the category of court officers that *Cammer* would list as paradigmatic conventional officers. Accordingly, a trustee in bankruptcy is also a conventional court officer protected by the court officer prong of §1503 (18 U.S.C. §1503 – an obstruction charge against a bankrupt debtor who threatened the attorney employed by the Chapter 7 trustee)"

(Emphasis Added). See also Conn. Bar Ass'n v. United States, 620 F.3d 81, 98, 2010 U.S. App. Div. LEXIS 18894 (2nd Cir. 2009). Please note that both United States v. Crispo and Conn. Bar Ass'n v. United States concerned events that occurred since the enactment of the Bankruptcy Code. Conn. Bar Ass'n v. United States held that a bankrupt debtor can be prosecuted for threatening the attorney for the trustee and/or members of her family on federal obstruction of justice charges. There is no reason to declare that a standing Chapter 13 Trustee appointed and supervised by the Office of the United States Trustee is not likewise an officer of the Bankruptcy Court, a federal court. And if an officer of the Bankruptcy Court had misappropriated trust funds from the court registry that said officer would be subject to an action to a FTCA action. But assuming arguendo that the Chapter 13

Trustee is not subject to the FTCA provisions, the United States Trustee remains subject to FTCA actions.

The United States Trustee and its officer are also required to properly supervise the administration of cases and standing trustees under chapter 13 of Title 11. Please see 28 U.S.C. §586(a)(3). And as part of said duty, the United States Trustee is to: (a) prepare procedural guidelines adopted by the Executive Office of the United States Trustee, 28 U.S.C. §586(a)(3(A)(i); and (b) "deposit or invest under section 345 of title 11 money received as trustee in cases under title 11. 28 U.S.C. §586(a)(5). And further as part of their responsibilities, the officers of the United States Trustee are to review the accuracy of the final report filed by the trustee. Please see Eresian v. Koza (In re Koza), 375 B.R. 711, 717 (1st Cir. BAP 2007). Please see Bankruptcy Rule 5009(a). And it is indisputable that the officers of the United States Trustee are governmental officers.

Accordingly, if there was a failure by the trustee to abide by the provisions set forth in the Bankruptcy Code due to errors in the handbook prepared by officials of the United States Trustee, the United States Trustee should bear said responsibility. Herein, the inconsistency in the United States Trustee's guidelines are apparent; the handbook as noted in In re Evans permitted Chapter 13 trustees to retain his or her percentage fee when a Chapter 13 case is dismissed or converted prior to plan confirmation based solely on its brief in Antonacci in 2011 and not

36

based on an analysis by the Bankruptcy Court; thereafter, in 2015, as evidenced by

the supplement to the handbook, the United States Trustee stated that:

> "If the plan is dismissed or converted prior to confirmation, the standing
> trustee must reverse payment of the percentage fee that had been collected
> upon receipt *if there is controlling law in the district controlling law in the
> district requiring such reversal* or if (after consultation with the United
> States Trustee) the standing trustee determines there are other grounds for
> concern."

The United States Trustee has still not proffered any authority or representation as

to why the above-referenced supplement differs between districts when the

Bankruptcy Code is a uniform law throughout the laws of the United States, which

may differ solely due to the various property and exemption laws of the various

states.

Herein, the first deposit into the Trustee's escrow account was June 19, 2019

and on the same date, the Chapter 13 Trustee disbursed moneys from said escrow

account; on July 24, 2019, the Debtor paid $1,000,00 and the Trustee disbursed

$15 out of the escrow account.  And the disbursement of $341,508.00 to Soussis

did not take place until July 22, 2020.  Accordingly, the Chapter 13 Trustee had

possession of the escrow moneys for over a year and not once did the United States

Trustee question the multiple disbursements from the escrow account or even

advise the Bankruptcy Court and/or Soussis as to the questionable disbursements

from the escrow account.  And was any of the Soussis percentage fees transferred

to the United States Trustee System Fund?  Was the United States Trustee "asleep at the wheel?"

And there was also a failure of the mandatory provision set forth in the Bankruptcy Code to promptly review said trustee's final report.  The United States Trustee was required to immediately bring errors in the final report to the attention of the Chapter 13 Trustee, the Bankruptcy Court and to Soussis  In the current matter, the officers of the United States Trustee had failed to do so.

And the Decision claimed, as advocated in the United States Trustee's Opposition, that Soussis had not exhausted her administrative procedures. However, as stated in Binder & Binder PC v. Barnhart, 481 F.3d 141, 2007 U.S, App. Div. LEXIS 7133 (2nd Cir. 2006) at 481 F.3d at 151, this Honorable Court has federal question and/or mandamus jurisdiction under the provisions set forth in 28 U.S.C. §1331 because, if such jurisdiction were unavailable, Soussis would be unable to obtain any judicial review of its claim for reimbursement of attorney's fees in accordance with the FTCA, especially as there is no administrative agency that has jurisdiction over this matter; it has never been claimed that the United States Trustee has an office or department that handles administrative expense claims against it such as the Social Security Administration.  In fact, neither the United States Trustee nor the Bankruptcy Court has ever furnished any information as to the filing of administrative claims against the United States Trustee.  And the

Bankruptcy Court never addressed the Second Circuit holding in <u>Binder & Binder, PC v. Barnhart</u> in which the Second Circuit stated that the federal court had jurisdiction over claims for attorney's fees pursuant to 28 U.S.C. §406 based on either federal question or mandamus jurisdiction.

And it should be further noted that 28 U.S.C. §1334(a) grants the Bankruptcy Court jurisdiction to hear and determine cases all cases under title 11. Please see also 28 U.S.C. §157(a).  And 28 U.S.C. §157(b)(1) provides:

> "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this title, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

Accordingly, it is indisputable that the Bankruptcy Court had and continues to possess the jurisdiction to hear and determine the FTCA claim, or at least, make appropriate findings for referral to the District Court.

28 U.S.C. §2678, which is entitled: Attorney fees; penalty" further provides in pertinent part:

> "No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title …"

Accordingly, any fee for the reimbursement of her attorney's fees and expenses to be awarded to Soussis must be limited to 25% of the amount; if the fee awarded to Soussis is $20,592.00, the maximum legal fee that may be awarded to Soussis is $5,148.00.

The Bankruptcy Court in the Opinion referenced the Equal to Access to Justice Act (the "EAJA") fees, 28 U.S.C. §2412.  However, 28 U.S.C. §2412(d)(1)(B) provides that an EAJA claim does not need to be filed until "thirty days of final judgment in the action…"  To date, there has not been a final judgment in favor of Soussis and, thus, the filing of the motion may be premature. Further, it is questionable whether the Bankruptcy Court even has jurisdiction to determine EAJA motions in non-adversary proceedings (please see 2020 Bankr. LEXIS 3174 at *31-*32 and the extensive discussion of the issue in In re Teter, 2021 Bankr. LEXIS 165, 2021 WL 371750 (Bkrtcy. N.D. Ohio 2021).

## CONCLUSION

For the reasons set forth above, Soussis is entitled to the full repayment of the Chapter 13 Plan payments that she has made, without any deduction for the Chapter 13 Trustee's statutory fees ($20,592.00), plus up to 25% of the amount to be refunded ($5,148.00) in accordance with the FTCA.

Dated:      Hauppauge, New York
            February  / ), 2021

                        JEFFREY HERZBERG, P.C.
                        Attorney for Debtor Julia F. Soussis

                        By: _____
                            Jeffrey Herzberg
                        300 Rabro Drive, Suite 114
                        Hauppauge, New York 11788
                        (631) 761-6558
                        jeff@jherzberglaw.com

## <u>Affirmation of Service</u>

Jeffrey Herzberg, an attorney duly licensed to practice law in the courts of

the State of New York, after being duly sworn on oath, and under the penalty of

perjury, affirms that on February 12, 2021, he emailed and mailed a hard copy of

the Brief for Debtor-Appellant dated February 12, 2020, by first class mail, under

the jurisdiction of the United States Postal System, postage prepaid, to:

>Michael J. Macco, Esq.
>Macco Law Group, LLP
>Chapter 13 Trustee
>2950 Expressway Drive South
>Suite 109
>Islandia, New York 11749
>csmith@maccolaw.com
>
>United States Trustee
>Long Island Federal Courthouse
>560 Federal Plaza, Room 560
>Central Islip, New York 11722-4437
>USTPRegion02.LI.ECF@usdoj.gov

Dated:          Hauppauge, New York
                February 12, 2021

                                        _____
                                        Jeffrey Herzberg