UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------x

In Re:

                          Civil Action No.: 2:20-cv-05673-JMA

JULIA F. SOUSSIS,

      Debtor-Appellant

     -against-

MICHAEL J. MACCO, CHAPTER
13 TRUSTEE,

      Appellee

------------------------------------------------x

## <u>REPLY BRIEF FOR DEBTOR-APPELLANT</u>

Jeffrey Herzberg, Esq.
JEFFREY HERZBERG, P.C.
Attorney for Debtor-Appellant Julia F.
Soussis
300 Rabro Drive, Suite 114
Hauppauge, New York 11788
(631) 761-6558
jeff@jherzberglaw.com

## TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………..1

POINT I – THE BANKRUPTCY COURT SHOULD HAVE ORDERED
       THE DISGORGEMENT OF ALL OF THE PROPOSED
       CHAPTER 13 PLAN PAYMENTS MADE BY SOUSSIS
       TO THE CHAPTER 13 TRUSTEE AS THE SOUSSIS
       PROPOSED CHAPTER 13 PLAN WAS NEVER CONFIRMED
       BY AN ORDER OF THE BANKRUPTCY COURT ………….2

POINT II – THE UNDERSIGNED COUNSEL AND/OR THE DEBTOR
       IS ENTITLED TO AN AWARD OF ATTORNEY'S
       FEES ……………………………..………………………..18

CONCLUSION ……………………………………………………………21

# TABLE OF AUTHORITIES

## Cases

Avon Nursing and Rehabilitation v. Becerra, Secretary of HHS, \_\_\_\_
     F.3d \_\_\_\_\_, 2021 U.S. App. LEXIS \_\_\_\_\_ (2nd Cir. 4/27/21) ..........17
Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d
     531 (1988) ................................................................18
Binder & Binder, P.C. v. Barnhart, 481 F.3d 141 (2nd Cir. 2006) ..........19, 20
Binder & Binder, P.C. v. Barnhart, 399 F.3d 128 (2nd Cir. 2005) ..............20
In re Acevedo, 497 B.R. 112 (Bkrtcy. D.N.M. 2013) ......................4, 5, 6
In re Crespin, 2019 Bankr. LEXIS 1575 (Bkrtcy. D.N.M. 2019) ...............7
In re Dickens, 513 B.R. 906 (Bkrtcy. E.D. Ark. 2014) ..........................4
In re Evans, 2020 Bankr. LEXIS 382, 68 Bankr. Ct. Dec. 106, 2020
     WL 739258 (Bkrtcy. D. Idaho 2020) ........................4, 6, 9, 15, 16
In re Lundy, 2017 Bankr. LEXIS 3317 (Bkrtcy. N.D. Ohio 2017) ...............4
Nardello v. Balboa (In re Nardello), 514 B.R. 105 (D.N.J. 2014) .........4, 6, 15
Sasilidharan v. Piverger, 145 A.D.3d 814, 44 N.Y.S.3d 85 (2nd Dept., 2016) ..19
Sikes v. Samuel, 559 B.R. 136, 2019 U.S. Dist. LEXIS 133758
     (W.D. La. 2016) ..........................................................4
Simmons v. United States, 764 Fed. Appx. 98, 2019 U.S. App. LEXIS
     10904 (2nd Cir. 2019) ...................................................18
Testing Servs., N.A. v. Pennisi, 443 F.Supp.3d 303 (E.D.N.Y. 2020) ..........20
United States v. Crispo, 306 F.3d 71 (2nd Cir. 2003) .............................19
United States v. Crispo, 2003 U.S. Dist. LEXIS 2078 (S.D.N.Y. 2003) .........19

## Statutes

11 U.S.C. §326 ......................................................2, 3
11 U.S.C. §330 ........................................................2
11 U.S.C. §503 ........................................................4
11 U.S.C. §1226 ......................................................6
11 U.S.C. §1326 ..................................................2, 3, 6, 9
28 U.S.C. §586(e) ..................................................3, 5, 9
28 U.S.C. §959 .......................................................18

The Appellant Julia F. Soussis ("Soussis"), by and through her attorney, Jeffrey Herzberg, P.C., filed the Brief for Debtor-Appellant dated February 12, 2021 and: (a) the Chapter 13 Trustee, by and through Peter Corey, Esq., filed the Co-Appellee Brief dated April 22, 2021 (the "Chapter 13 Trustee Brief"); and (b) the Office of the United States Trustee by and through its attorney, Andrew D. Velez-Rivera, Esq., filed the Brief of Appellee William K. Harrington, United States Trustee on or about April 23, 2021 (the "UST Brief"). Soussis is filing this reply brief in response to the Chapter 13 Brief and the UST Brief.

It is incredulous that the Chapter 13 Trustee failed to mention that he took periodic/interim payments toward the fulfillment/satisfaction of the purported Chapter 13 fee totaling TWENTY THOUSAND FIVE HUNDRED NINETY TWO and xx/100 Dollars ($20,592.00); the $20,592.00 Chapter 13 Trustee fee is greater than five times (5x) the FOUR THOUSAND and xx/100 Dollars ($4,000.00) fee received by Soussis's Chapter 13 attorney, Ivan E. Guerrero, Esq. Further, the UST provided absolutely no review and/or oversight of the interim takings of moneys totaling $20,592.00.

# POINT I

## THE BANKRUPTCY COURT SHOULD HAVE ORDERED THE DISGORGEMENT OF ALL OF THE PROPOSED CHAPTER 13 PLAN PAYMENTS MADE BY SOUSSIS TO THE CHAPTER 13 TRUSTEE AS THE SOUSSIS PROPOSED CHAPTER 13 PLAN WAS NEVER CONFIRMED BY AN ORDER OF THE BANKRUPTCY COURT

Soussis concurs that statues must be given their ordinary meaning. Section 326 of the Bankruptcy Code entitled: "Limitation on compensation of trustee provides in pertinent part:

> "(b) In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan."

It must be emphasized that Chapter 12 of the Bankruptcy Code concerns a family farmer or fisherman reorganization with regular annual income and a Chapter 13 case concerns an individual with regular income. And Section 330 of the Bankruptcy Code pertains to the award of fees and reimbursement of expense to the bankruptcy trustee, the attorneys and the other professionals involved in a bankruptcy case.

Section 1326 of the Bankruptcy Code entitled: "Payments" provides in pertinent part:

2

"(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, …

(2)(A) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).**

(3) Subject to section 363, the court, may, upon notice and a hearing, modify, increase or reduce the payments required under this subsection pending confirmation of a plan."

(Emphasis Added). And 28 U.S.C. §586(e)(2) provides in pertinent part:

"(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under … or chapter 12 or 13 of title 11 {11 USCS §§1181, et seq. or 1301 et seq.]. shall fix---

(B) a percentage fee not to exceed—

(i) in a case of a debtor who is not a family farmer, ten percent…

Based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual (referring to the Chapter 13 trustee) shall collect such percentage fee from all payments received by such individual under plans in the cases under … or 1301 et seq.] for which such individual serves as standing trustee."

With all due respect, the Chapter 13 Trustee and the UST have sought to eviscerate the provisions of 11 U.S.C. §§326 and 1326(a)(2), which required the Chapter 13 Trustee to collect all Chapter 13 plan payments, but if there is not a confirmation of the Chapter 13 plan to immediately return all Chapter 13 plan

3

payments made by the Chapter 13 debtor including but not limited to the Chapter 13 Trustee's percentage fee, less any and all payments to creditors and fees awarded under Section 503(b) of the Bankruptcy Code (the payment of allowed administrative expense claims). Please note that the Chapter 13 Trustee never filed a motion to permit and authorize the awarding of an administrative expense claim.

Soussis cited at length the holdings of In re Acevedo, 497 B.R. 112 (Bkrtcy. D.N.M. 2013), In re Dickens, 513 B.R. 906 (Bkrtcy. E.D. Ark. 2014), Sikes v. Samuel, 559 B.R. 136, 2019 U.S. Dist. LEXIS 133758 (W.D. La. 2016), In re Lundy, 2017 Bankr. LEXIS 3317 (Bktrcy. N.D. Ohio 2017) and In re Evans, 2020 Bankr. LEXIS 382, 68 Bankr. LEXIS 382, 68 Bankr. Ct. De. 106, 2020 WL 739258 (Bkrtcy. D. Idaho 2020) which all criticized the Nardello v. Balboa (In re Nardello), 514 B.R. 105 (D.N.J. 2014) holding except In re Acevedo which pre-dated In re Nardello. However, the Chapter 13 Trustee and the UST barely commented upon said holdings except to state on page 13 of the Chapter 13 Trustee Brief:

> "Decisions such as *In re Evans* 615 B.R. 290 (Bankr. Idaho 2020), read the words 'and hold' into the statute, completely changing the statute's directive:
>
>> This Court's interpretation gives operative effect to each statute: §586(e)(2) directs the trustee to collect ***and hold*** the payments pending plan confirmation, while §1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation, including the trustee's percentage fee. (*Emphasis added.*)

Evans at 296. Appellee's position does not add words to the statute in order to reach their conclusion. And, as recognized by the court in *Nardello,* the *Acevedo* court recognized that its decision is based upon 'a somewhat unnatural reading of the first sentence of §582(e)(2). *See, In re Acevedo* 497 B.R. 112, 124 (D.N.M. 2013)."

However, the Chapter 13 Trustee failed to note that In re Acevedo after actually stating that the provisions of 28 U.S.C. §586(e)(2) cannot be read in isolation and there were at least three (3) possible interpretations of 28 U.S.C. §586(e)(2), stated at 497 B.R. at 122-123:

"To avoid this conflict, the Court concludes that the best, most harmonious reading of the two statutes is that §586(e)(2) directs the trustee to collect and hold the percentage fees pending plan confirmation, while §1326(a)(2) tells the trustee when and how to discharge payments after confirmation or denial of confirmation, including the trustee's percentage fee. The UST points out that §586(e)(2) requires the trustee to collect the percentage fee on all payments received under plans, not limiting such collection to confirmed plans. The UST points out further that in the Code, the term 'plan' is used to refer to both confirmed and unconfirmed plans unless the term 'confirmation' or 'confirmed' appears in close proximity or the context clearly dictates otherwise. The Court finds this argument persuasive as it relates to §586(e)(2) and agrees that the trustee is to collect the percentage fee from all payments received under both confirmed and unconfirmed plans. This construction is consistent with the Court's determination that payments proposed by a plan under §1326(a)(1)(A) include all payments the debtor makes to the trustee, including the trustee's percentage fee. The Court disagrees that the term 'collect,' as used in §586(e)(2), includes not only setting aside funds from payments received under plans for trustee's fees but also paying those funds to the trustee or to the UST System Fund. Such a construction would conflict with §§1326(a)(1)(A) and 1326(b)(2). As discussed above, §1326(b)(2) requires the trustee in unconfirmed cases to return to the debtor all funds received, including the trustee's fee, after payment of administrative expenses. Consequently, even though §586(e) does not specifically address when the collected trustee's fees are to be paid out, the Court rejects the UST's construction of §586 payment of such fees from payments in cases with unconfirmed plans.

The requirement in the second sentence of §586(e)(2), directing the Trustee to pay certain excess funds to the UST System Fund, does not conflict with the Court's interpretation of §586 and §1326. Both clauses in the second sentence of §586(e)(2) can be reasonably interpreted only to require payments in cases in which plans are confirmed. Nothing in the second sentence of §586(e)(2) requires the trustee to generate such a surplus by paying her salary and operating expenses from funds collected in cases where no plan is confirmed."

And, thereafter, In re Acevedo at 497 B.R. at 123-124 compared the provisions set forth in 11 U.S.C. §1226 (a farmer's/fisherman's bankruptcy) with Section 1326 of the Bankruptcy Code (an individual with a regular source of income). Specifically, Section 1226(a) of the Bankruptcy Code provided:

"(a) Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting –
(1) any unpaid claim allowed under section 503(b) of this title; and
(2) **if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee."**

(Emphasis Added). Accordingly, In re Acevedo concluded that if Congress had intended to permit and authorize Chapter 13 trustees to immediately receive and retain his or her percentage fee prior to confirmation of a Chapter 13 plan, it could have easily added said provision in Section 1326(a) of the Bankruptcy Court, but Congress never added said provision to Section 1326(a). And in accepting the Acevedo interpretation and not the Nardello interpretation, In re Evans stated at 615 B.R. at 302:

"The U.S. Trustee argues, 'even the court in *Acevedo* conceded that it was engaging in 'a somewhat unnatural reading' of section 586(e)(2).'' However, it is important to consider the full context of that quotation. The *Acevedo* court goes on to say, in the very next sentence, 'The only alternative, however, is a substantially less natural reading of §1326(a).' *Id.* at 124-25. 'What's good for the goose is good for the gander.' *Bates v. Jones,* 131 F.3d 843, 861 (9th Cir. 1997). If 'a somewhat unnatural reading' would be unfavorable a 'substantially less natural reading' is even more unfavorable."

And In re Crespin, 2019 Bankr. LEXIS 1575 (Bkrtcy. D.N.M. 2019) stated at 2019

Bankr. LEXIS 1575 at *3-*7:

"The rule in this district is that if a chapter 13 plan is not confirmed, all payments made by the debtor to the trustee must be refunded to the debtor without deducting the trustee's percentage fee. This rule was not adopted because of perceived fairness to the trustee, but because that is how the Court construed the relevant law. Were the Court drafting the law, it would pay the trustee her percentage fee in cases that fail pre-confirmation. (if a chapter 12 plan is not confirmed, the chapter 12 trustee may deduct her fee before sending plan payments back to the debtor). The trustee does a lot of work in failed cases and deserves to be paid for that work. Furthermore, the trustee's percentage is calculated in such a way that debtors in successful cases are forced to shoulder the expense of failed cases. Paying the trustee in failed cases likely would reduce the overall percentage fee paid to the trustee in all chapter 13 cases,

While not challenging the *Acevedo* holding entirely, the trustee argues that it should be overruled in part. Specifically, *Acevedo* held that 'the trustee may pay creditors only under a confirmed plan.' The trustee argues that the ruling should be modified so she can be paid her fee for disbursements under both confirmed *and unconfirmed* plans. The Court will analyze whether the trustee's argument has merit under the current statutory scheme.

B. The Legal Effect of Unconfirmed Plans.

The trustee argues that when the Code uses the term 'plan,' it sometimes means confirmed plans and sometimes means both confirmed and unconfirmed plans. The Court has acknowledged that, at least in some

instances, that is correct (the term 'plan' when used in 28 U.S.C. §586(e)(2) refers to both confirmed and unconfirmed plans). The trustee's follow-on argument, however, is that she should be paid for distributions made 'under' or 'pursuant to' unconfirmed plans. This argument must be overruled: the Court concludes that chapter 13 trustees are never permitted to make disbursements under unconfirmed plans. Section 1327(a) provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Thus, while confirmed plans bind the debtor and creditor (and the Trustee), unconfirmed plans do not. In *In re Fiorilli*, 196 B.R. 83 (Bankr. N.D. Ohio 1996), for example, the court stated:

> Debtors argument is also faulty in that it presumes that the mere filing of a chapter 13 plan binds the parties. Debtor argues that under the provisions of Clause 4 of the plan, 'the value, as of the effective date of the plan, of property to be distributed to Retail Credit Corporation pursuant to the terms of the plan is in fact, the exact amount of the allowed secured claim [provided by the plan].' ... Had Debtor's plan been confirmed this statement may have been true because the plan would have had an 'effective date.' However, at the time that RCC entered its objection to confirmation the plan was not yet confirmed, was not yet 'effective,' and thus did not yet bind the parties by its terms.

('the provision in each unconfirmed plan binds no one, least of all the Court'); (distinguishing between the effect of debtor's proposed but unconfirmed plans and his ultimately confirmed plan). In short, unconfirmed plans, whether filed in chapter 11, 12, or 13, are legal nullities. They are like motions that have yet to be ruled upon. Unconfirmed plans are on the docket and may indicate that a case is progressing toward plan confirmation, but without confirmation a plan is nothing. What Gertrude Stein said once about the Oakland, California of her childhood, can accurately said about unconfirmed Chapter 13 plans: 'there is no there there.'

In particular, the trustee may not make plan payments under unconfirmed plans. Instead, she must retain all money received from the debtors 'until confirmation or denial of confirmation.' Were she allowed to make payments under unconfirmed plans, she could not comply with §1326(a)(2), which requires the return of all funds to the debtor if a plan is not confirmed".

(Citations Omitted). And In re Evans, 615 B.R. 290, 2020 Bankr. LEXIS 382

(Bkrtcy. D. Idaho) after stating the provisions of 28 U.S.C. §586(e) and Section

1326(a) of the Bankruptcy Code, stated at 615 B.R. at 293-298:

"*3. The Apparent Conflict*
The statutes quoted above appear to conflict. The language in §586(e) directs the trustee to collect the trustee percentage fee from all payments received while §1326(a)(2) requires, in a case dismissed prior to confirmation, the trustee to return any payments not yet due and owing to creditors back to the debtor.

This Court has reviewed several decisions that have wrestled with the interpretation of the statutes, as well as the legislative history. For the reasons set forth below, the statutes, especially when construed together, are ambiguous. It is not clear from the statutory language whether Congress intended to allow a trustee to collect her fee on all payments received pre- or post-confirmation, or intended to limit a trustee's fee to a percentage of post-confirmation disbursements.

B.  Rules of Statutory Interpretation

When interpreting a statute, the court's 'task is to construe what Congress has enacted.' Courts will 'look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' 'A primary canon of statutory interpretation is that the plain language of a statute should be enforced according to its terms, in light of its context.' 'If the terms are ambiguous, [the Court] may look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history.' However, courts will resort to legislative history, even where the plain

language is unambiguous, 'where the legislative history clearly indicates that Congress meant something other what it said.'

1. *The Court must construe every statute in context to avoid superfluities and give word some operative effect*

'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' If possible, a court will 'construe a statute to give every word some operative effect.'

In order to construe the meaning of the statutes, it is important to consider the parallel provision in chapter 12.

Section 1226(a), provides:

> (a) Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting –
> (1) any unpaid claim allowed under section 503(b) of this title; and
>
> (2) *if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.*

11 U.S.C. §1226(a) (emphasis added). A leading bankruptcy treatise states 'the authority granted to the standing chapter 12 trustee to deduct a percentage fee is unique to chapter 12. When a chapter 13 plan is denied confirmation, a standing chapter 13 trustee is authorized to pay unpaid administrative claims but is not authorized to deduct the standing trustee's percentage fee.' 8 COLLIER ON BANKRUPTCY ¶1226.01 (Richard Levin & Henry J. Sommer eds., 16th ed.).

If the Trustee's argument is correct, a standing trustee in a chapter 12 could use the §1226(a)(2) provision without §586(e) in order to retain trustee fees in a chapter 12 case that has been dismissed prior to plan confirmation. Yet, a standing trustee in a chapter 13 case would need to use §586(e) in order to retain trustee fees in a case that has been dismissed prior to plan

confirmation. Further, in either a chapter 12 case or a chapter 13 case, a trustee could simply point to §586(e) to retain fees without regard to the chapter 12 or chapter 13 provisions entirely. This would render at least §1226(a)(2) superfluous and give it no operative effect.

The Trustee argues that the context of §1326(b) is acknowledgement that trustee fees should be paid regardless of plan confirmation by stating:

> Section 1326(b)(2) also states that before or at the time of each payment to creditors under the plan there shall be paid the percentage fee fixed for such standing [trustee] under section 586(e)(1)(B) of title 28. Since typically payments are not made to creditors unless a plan is confirmed, this is further acknowledgement that Trustee fees should be paid regardless of whether a plan is confirmed.

In addressing this argument, it is important to consider the context of both §1326 and §1226. Section 1326(b)(2) provides the following:

> Before or at the time of each payment to creditors under the plan, there shall be paid … if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) …'

Section 1226(b) contains a similar provision:

> Before or at the time of each payment to creditors under the plan, there shall be paid … if a standing trustee appointed under section 1202(c) [586] of this title is serving in the case, the percentage fee fixed for such standing trustee under section 1202(d) [586] of this title.

Yet, although both chapters contain the similar provision to which the trustee refers, §1226(a)(2) expressly allows for a trustee to deduct the percentage fee in unconfirmed cases. If §1326(b)(2), is, as Trustee argues, 'further acknowledgement that trustee's fees should be paid regardless of whether a plan is confirmed,' then §1226(a)(2), the clause specifically allowing for a trustee to deduct her fees in unconfirmed chapter 12 cases, is superfluous and has no operative meaning.

Trustee opines that the difference between the statutes is attributable to the fact that chapter 12 debtors do not always make payments before confirmation, whereas chapter 13 debtors must make payments under

§1326(a)(1). Thus, if there is a payment made under a chapter 12 case, the difference in the statutes entitles the trustee to retain the fees. This argument is not persuasive for the reasons set forth below.

In *Miranda,* a chapter 13 trustee appealed an order from a bankruptcy court denying allowance of the trustee fee on payments received from the debtors in cases dismissed or converted prior to confirmation. 285 B.R. 344 (10th Cir. BAP 2001) (unpub. dispo). The court addressed the distinction between a chapter 12 and chapter 13 case:

> The provisions of Chapter 13 require the debtor to begin making payments within 30 days after filing the plan. Yet, this obligation to make preconfirmation payments does not pose a risk to the Chapter 13 debtor. Unlike Chapter 12, if the Chapter 13 plan is not confirmed and the case is dismissed or converted, the standing Chapter 13 trustee is authorized to pay unpaid administrative claims, but she is not authorized to deduct her standing trustee's percentage fee. Thus, the distinction between Chapter 12 and Chapter 13 is appropriate. If a debtor is required to make preconfirmation payments, the debtor should not have to fund the standing trustee's fees out of those payments when the plan is not confirmed and the case is converted or dismissed. In fact, in cases involving a long delay in confirming the plan, such a rule could be punitive to the debtor.

This Court agrees. Section 1326(a)(1) *requires* debtors to commence making payments within 30 days of filing the plan. This obligation is accompanied by a subsequent provision that requires the trustee to disgorge all payments received pursuant to that plan if the plan is not confirmed and the case is dismissed. The provisions of chapter 12 *do not require* a debtor to make payments pre-confirmation. Yet §1226(b)(2) allows the trustee to deduct a fee on payments made pre-confirmation even if a case is dismissed.

Section 1326(b) requires the trustee to pay the trustee's percentage before or at the time of each payment to creditors under the plan. Section 1326(a)(2) only allows the trustee to pay creditors after a plan is confirmed. If the trustee cannot pay creditors until a plan is confirmed pursuant to §1326(a)(2), then §1326(b) is not operative until a plan is in effect. (11 U.S.C. §1326(b) seems to assume a prior confirmation.'). Section 1326(a)(2) is operative until a plan is in effect.

Because §1226(b)(2) and §1326(b)(2) contain almost identical language, but §1226(a)(2) expressly allows a trustee to deduct a percentage fee in unconfirmed cases, and §1326(b)(2) is inoperative until a plan is in effect, the Court does not find §1326(b)(2) permits trustee fees to be paid regardless of whether a plan is confirmed. This Court's interpretation gives operative effect to each statute: §586(e)(2) directs the trustee to collect and hold the payment plan confirmation, while §1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation including the trustee's percentage fee.

2. *Nothing in §586 contemplates that once a fee is collected, it is then irrevocable*

The U.S. Trustee argues that the word 'plans' in §586(e) refers to both confirmed and unconfirmed plans. This interpretation is consistent with the holding of *In re Dickens,* 513 B.R. at 911. In *Dickens,* the court discussed the meaning of the word 'plans' in §586(e):

> [28 U.S.C. §586] Subsection (a)(3)(C) charges the U.S. Trustee with 'monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respects to such plans.' Sections 1224 and 1324 require a hearing on the confirmation of Chapter 12 and Chapter 13 plans respectively. Logically, a confirmation hearing cannot be held after a plan has been confirmed. Therefore, the word 'plans' in §586(a)(3)(B) cross-references provisions governing Chapter 11 plans that are not confirmed. Therefore, the term 'plans' in §586(a)(3)(B) must also include plans that are confirmed. Consistent with the definition used in other subsections of §586, the Court concludes that 'plans' in §586(e)(2) includes plans that are not confirmed.

The Court agrees that the interpretation of the word 'plans' in §586(e) includes both confirmed and unconfirmed plans.

Next, the U.S. Trustee argues that the word 'collect' in §586(e) means to 'obtain payment.' The U.S. Trustee goes on to state '28 U.S.C. §586(e) does not contemplate that once a fee is collected, any part of it should be refunded to the debtor.'

13

This argument is similar to that put forth by the trustee and the United States Trustee in *In re Dickens*. In that case, the trustee and the U.S. Trustee argued that once a standing trustee obtains payment of a percentage fee, the fee cannot be returned to the debtors. The court disagreed, finding that nothing in the definition relied on by the United States Trustee 'mandates a view that collection of a percentage fee is irrevocable and forever vests in the standing trustee.' This Court agrees. Just as §586(e) does not contemplate that once a fee is collected, any part of it should be refunded to the debtor, it also does not contemplate that any portion of the fee is irrevocable. Section 586(e) is silent on the issue."

*3. Legislative History*

Courts will resort to legislative history, even where the plain language is unambiguous, 'where the legislative history clearly indicates that Congress meant something other than what it said.'

As originally enacted in 1978, §1326 read as follows:
> (a) Before or at the time of each payment to creditors under the plan, there shall be paid—
> > (1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and
> > (2) if a standing trustee appointed under section 1302(d) is serving in the case, the percentage fee fixed for such standing trustee under section 1302(e) of this title.

When the Bankruptcy Code was enacted in 1978, the legislative history stated, 'If a private standing trustee serves [in a chapter 13 case], his fee is *fixed* by the Attorney General under proposed 28 U.S.C. §586(e) and it will be *payable* under proposed 11 U.S.C. §1326(a)(2).' H.R. REP. NO. 95-595, 1978 U.S.C.C.A.N. 5963, 6284.

However, when the Bankruptcy Code was amended in 1984, Congress 'added a new subsection (a) to section 1326 and was redesignated the previous subsections (a) and (b) as subsections (b) and (c).' 8 COLLIERS ON BANKRUPTCY ¶1326.02[2] (Richard Levin & Henry J. Sommer eds., 16th ed.). 'The new subsection (a) required plan payments to begin within 30 days of the filing of the plan.' Because Congress added a subparagraph in §1326 in 1978, the legislative history that stated the fee was payable under proposed §1326(a)(2) is actually referring to the modern §1326(b)(2).

Accordingly, if a private standing trustee serves in a chapter 13 case, his fee is fixed by the Attorney General under proposed §586(e), and it will be payable under proposed §1326(b)(2). As stated previously, §1326(b) is not operative until a plan is in effect; §1326(a)(2) controls pre-confirmation.

When the Bankruptcy Code was subsequently amended in 1986, the legislative history stated the following:
> 'Section 222 conforms 11 U.S.C. 1302(a) to the fact that it is the U.S. Trustee who will have appointed the standing trustee, and not the court. 11 U.S.C. 1302(d) and (e) are stricken for this reason. Appointment and compensation of a standing trustee will be governed by 11 U.S.C. 586.
> …
> Section 223 conforms 11 U.S.C. 1326(b) to the fact that 11 U.S.C. 586 will govern the appointment and compensation of a standing trustee, and not 11 U.S.C. 1302.

H.R. REP. No. 99-764, 29, 1986 U.S.C.C.A.N. 5227, 5241.

The legislative history from 1978 specifically states that the pay is fixed by §586(e), whereas the legislative history in 1984 refers to as a whole. Thus, the legislative history is ambiguous and does not aid the Court in its interpretation."

(Citations Omitted) (Footnotes Omitted). It should be further noted that In re

Evans considered the In re Nardello decision and stated at 615 B.R. at 300-301:

> "There is no controlling precedent or case law to which this Court is bound. Trustee relies on the decision of *In re Nardello* to support her position. 514 B.R. 105 (D.N.J. 2014). In that case, the debtor filed a chapter 13 petition. During the pendency of the case but before confirmation, a third party filed a motion seeking court approval for the sale of real estate jointly owned by the third party and the debtor. The bankruptcy court authorized the sale of the property, the debtor consented to the distribution of proceeds and the court ordered the proceeds to be held by the standing trustee pending further order from the court. The court then ordered the trustee to pay the third party their one-half share of the proceeds from the sale of the real estate, as well as the remaining proceeds which the debtor owed for payment of debtor's share of the mortgage on the property. These disbursements were made according to

the court order not pursuant to the plan. The case was then voluntarily dismissed. The standing trustee filed a final report and accounting, retaining trustee expenses and compensation based on the pre-confirmation payment disbursements to the third party. The debtor objected to the trustee percentage fee.

The bankruptcy court found in favor of the standing trustee. The bankruptcy court held that §1326(a)(2) and (b) only apply to payments made as proposed by a plan. Because the funds on which the trustee's percentage fee was based were not payments proposed by the plan, §1326(a)(2) and (b) did not apply. The bankruptcy court held that §586 applied, and distinguished the case from cases where no payments were made to creditors pre-confirmation on the grounds that the debtor had consented to the disbursement of funds to the third party from the sale of the jointly held real estate prior to plan confirmation.

The case at bar is distinguishable. Indeed, the court in *Nardello* distinguished the facts of that case from other cases because the court was considering whether the percentage fee payment was appropriate if payments are disbursed prior to plan confirmation but upon debtor approval, as well as payments received by the trustee that were not contemplated by the plan. On appeal, the district court distinguished *Acevedo, Miranda,* and *Rivera,* because, in *Nardello,* the standing trustee was required to hold the sale proceeds from the property pre-confirmation 'even though [the] proceeds were not contemplated in Debtor's initial plan. Had the Standing Trustee not been required to hold the sale proceeds, there would be no justification for the percentage fee sought.'

Here, there are no sale proceeds held by the Trustee or disbursements made, only payments to the Trustee pursuant to, and contemplated by, the plan pre-confirmation. The debtor did not consent to any disbursements by the trustee prior to confirmation. Additionally, the Trustee was not required to disburse any creditor payments like the trustee in *Nardello* prior to plan confirmation. Thus, *Nardello* is not on point."

(Citations Omitted)(Footnotes Omitted). <u>In re Evans </u>concluded at 615 B.R. at 290

by stating:

"This Court believes the correct interpretation falls in line with the reasoning of *Acevedo, Dickens* and *Lundy*. Section 586(e)(2) directs the trustee to collect and hold the payments pending plan confirmation and the source from which to collect the percentage fee, while §1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation. Accordingly, the trustee must hold the payments in her possession until confirmation or denial of confirmation. If a chapter 13 case is dismissed pre-confirmation, as in this case, the trustee shall return any such payments not previously paid and not yet due and owing to creditors to the debtor, including the trustee's percentage fee..."

It must be further noted that the United States Court of Appeals for the Second Circuit just recently stated in <u>Avon Nursing and Rehabilitation v. Becerra, Secretary of HHS,</u> ___F.3d _____, 2021 U.S. App. Div. LEXIS _____ (2nd Cir. 4/27/21):

"'Where Congress includes particular language in one section of a statute but omits it in another,' we 'presume[] that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' *United States ex rel. Hayes v. Allstate Ins. Co.,* 853 F.3d 80, 86 (2d Cir. 2017)(quoting *Kucana v. Holder,* 558 U.S. 233, 249 (2010))."

Accordingly, the inclusion of the right of the Chapter 12 trustee to receive his or her statutory percentage fee in an unconfirmed Chapter 12 case relative to the omission of the same in Chapter 13 cases must be presumed to be intentional and purposeful in the disparate inclusion or exclusion.

And further, if the statutes are read according to how the UST and the Chapter 13 Trustee argues, any time that the Chapter 13 trustee objects to the confirmation of a proposed Chapter 13 plan, he or she is in conflict of interest

situation. Is he or she opposing the proposed plan simply to reap a higher retained percentage fee?

Therefore, it is beyond peradventure that a Chapter 13 trustee has no legal right to retain a statutory percentage fee in an unconfirmed Chapter 13 case.

## POINT II

### <u>THE UNDERSIGNED COUNSEL AND/OR THE DEBTOR IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES</u>

The undersigned counsel filed a motion for the award of attorney's fees in accordance with the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §959(a). The FTCA provides:

> "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission or act by an employee of the Government while acting within the scope of his office or employment where the United States, if a private person, would be liable to the claimant in accordance with the laws of the place where the act or omission occurred."

However, the negligent or wrongful act or omission can not be a discretionary act, but must be a mandatory act. Please see <u>Berkovitz v. United States,</u> 486 U.S. 531, 535-536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Herein, the intentional retention of the Chapter 13 Trustee percentage fee on the dismissal of the unconfirmed Soussis Chapter 13 case was a mandatory act and had involved no discretion. Please see <u>Simmons v. United States,</u> 764 Fed. Appx. 98, 99-100, 2019 U.S. App. LEXIS 10904 (2nd Cir. 2019).

Second, Soussis is suffering a loss of property, namely the $20,592 that the Chapter 13 Trustee had wrongfully withheld from Soussis.

Third, the Chapter 13 Trustee as the escrow agent of the escrowed funds would be liable for the full return of the escrowed moneys based on the laws of the State of New York. Please see <u>Sasiidharan v. Piverger,</u> 145 A.D.3d 814, 815, 44 N.Y.S.3d 85 (2nd Dept., 2016).

Fourth, the Court-appointed Chapter 13 trustee is an officer of the Court. Please see <u>United States v. Crispo,</u> 306 F.3d 71, 81-82 (2nd Cir. 2002). In fact, on the remand, <u>United States v. Crispo,</u> 2003 U.S. Dist. LEXIS 2078 (S.D.N.Y. 2003) stated at *9: "A bankruptcy trustee is appointed by the bankruptcy court to be an officer of the court." Neither the UST nor the Chapter 13 Trustee has provided a cogent explanation as to why the Chapter 13 Trustee is not an officer of the court notwithstanding that he was appointed by the UST.

Lastly, neither the UST nor the Chapter 13 Trustee addressed the holding of <u>Binder & Binder, P.C. v. Barnhart,</u> 481 F.3d 141, 151 (2nd Cir. 2006), except that the bottom of page 37 and the top of page 38 of the UST Brief merely stated:

> "Ms. Soussis argues that the bankruptcy court had jurisdiction to hear her FTCA claims notwithstanding her failure to exhaust her administrative remedies because otherwise she would be unable to obtain judicial review of her claim since the United States Trustee has no office that handles such claims and she has been provided no information as to the filing of administrative claims against the United States Trustee. Soussis Brief at 38 (citing *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 151 (2d Cir. 2006)). This argument is without merit for two reasons. First, as stated above, the

19

exhaustion requirement is jurisdictional and cannot be waived. *Keene Corp.,* 700 F.2d at 841. Second, the procedure for filing an administrative claim against the United States Trustee (or any Government agency) is not complicated, and it is publicly available in the Department of Justice regulations implementing the statute. *See* 28 C.F.R. §14.2. As [e]very citizen is presumed to know the law,' *Georgia v. Pub.Resource. Org, Inc.,* 140 S.Ct. 1498, 1507 (2020) (citation omitted), and this potential claimant is represented by counsel, this argument is unpersuasive."

First, the UST is absolutely incorrect as to its analysis of the <u>Binder & Binder, P.C. v. Barnhart</u> decision; please note that the undersigned counsel has personal knowledge of the latter decision as the undersigned counsel had represented the Plaintiff-Appellant Binder & Binder, P.C. in said action. First, the <u>Binder & Binder, P.C.</u> decision was based on the fact that Binder & Binder, P.C., as the attorney for the disability claimant, was not subject to an administrative claim process and, thus, the claim for attorneys' fee was based on federal question and/or mandamus jurisdiction. Please see also <u>Binder & Binder, P.C. v. Barnhart,</u> 399 B.R. 128 (2nd Cir. 2005), <u>Testing Servs., N.A. v. Pennisi,</u> 443 F.Supp.3d 303, 326 (E.D.N.Y. 2020); and as was further stated in <u>Binder & Binder, P.C. v. Barnhart</u> at 399 F.3d at 133, mandamus jurisdiction in accordance with the provisions set forth in 28 U.S.C. §1361 is available "to compel an officer or employee of the United States or any agency thereof to *perform a duty* owed to the plaintiff."

In the current matter, the claim for attorney fees is being made by the undersigned counsel and not by Soussis and the undersigned counsel was not Soussis' bankruptcy attorney; rather, said counsel was Ivan E. Guerrero, Esq.

Accordingly, the undersigned counsel is not subject to the UST administrative claim process, if said administrative claim process actually exists. Second, going through the administrative process would be superfluous and a waste of everyone's time and effort as the UST has already denied that Soussis was entitled to the return of the Chapter 13 Trustee percentage fee in both the Bankruptcy Court and this Honorable Court. Accordingly, the filing of an administrative claim would be superfluous. And most importantly, the return of the Chapter 13 Trustee percentage fee is subject to federal question jurisdiction and not the whim of the UST. And assuming arguendo that federal question jurisdiction is inapplicable herein, this Honorable Court has mandamus jurisdiction to compel the UST to bear all or part of the legal fees incurred by Soussis in seeking this disgorgement due to its failure to perform a duty due and owing her.

And as set forth on page 25 of the Soussis Brief, the undersigned counsel is limited to 25% of the amount, or a total of $5,148.00.

## **CONCLUSION**

For the reasons set forth in the Soussis Brief and in this reply brief, Soussis must receive the return of the entire retained Chapter 13 Trustee's percentage fee payments ($20,592.00) plus the undersigned counsel is entitled to a FTCA award

in the total sum of $5,148.00.

Dated:      Hauppauge, New York
             May 3, 2021

                        JEFFREY HERZBERG, P.C.
                        Attorney for Debtor-Appellant Julia Soussis

                        By: _____
                              Jeffrey Herzberg
                        300 Rabro Drive, Suite 114
                        Hauppauge, New York 11788
                        (631) 761-6558
                        jeff@jherzberglaw.com

## Affirmation of Service

Jeffrey Herzberg, an attorney duly licensed to practice law in the courts of the State of New York, after being duly sworn on oath, and under the penalty of perjury, affirms that on May 3, 2021, he served a copy of this Reply Brief by ECF and by first class mail, postage prepaid, to:

Peter Corey, Esq.
Michael J. Macco, Chapter 13 Standing Trustee
2950 Express Drive South
Islandia, New York 11749

William K. Harrington, Esq.
Office of the United States Trustee
560 Federal Plaza
Central Islip, New York 11722

Dated:      Hauppauge, New York
           May 3, 2021

_____
Jeffrey Herzberg